## HOME BENEFIT ASSOCIATION *v.* SARGENT.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE
SOUTHERN DISTRICT OF NEW YORK.

No. 155. Argued January 12, 1892. — Decided January 26, 1892.

A policy of life insurance provided as a condition, that death of the assured
"by his own hand or act, whether voluntary or involuntary, sane or
insane, at the time" was a risk not assumed by the insurer. A suit to
recover the amount of the policy was tried on the theory on both sides,
that death from a shot from a pistol fired by accident by the assured,
was covered by the policy : *Held,*

 (1) Evidence drawn out on the cross-examination of a witness, which
   has a bearing on the testimony given by him on his direct exami-
   nation, is competent, especially where it relates to a part of the
   same conversation ;

 (2) An inquiry as to what conversation was had with the plaintiff's
   agent is not competent, if it does not appear what the subject of
   the conversation was, or what was intended to be proved by it ;

 (3) In view of the contents of the proofs of death and of the evidence,
   the plaintiff was not estopped from claiming that the death of the
   assured was caused otherwise than by suicide, and it would not
   have been proper for the court to charge the jury that by the
   introduction of the proofs of death, the burden was put on the
   plaintiff to satisfy the jury, by a preponderance of evidence, that
   the assured died otherwise than by his own hand ;

 (4) The defendant having alleged in its answer, that the death of the
   assured was due to a cause excepted from the operation of the
   policy, it was not error for the court to charge the jury that
   the defendant was bound to establish such defence by evidence
   outweighing that of the plaintiff.

THE case is stated in the opinion.

*Mr. Francis Lawton* (with whom was *Mr. Austen G. Fox*
on the brief) for plaintiff in error.

*Mr. Miron Winslow* for defendant in error.

MR. JUSTICE BLATCHFORD delivered the opinion of the court.

This is an action at law, brought in the Circuit Court of the
United States for the Southern District of New York, by Hen-

rietta P. Sargent, a citizen of Massachusetts, against the Home Benefit Association, a life insurance association incorporated by the State of New York, to recover the sum of $5000, with interest from March 15, 1887, upon a policy of life insurance issued by the defendant, September 5, 1885, on the life of Edward F. Hall, Jr., for the benefit of the plaintiff, who was his sister.

Hall was made by the policy an accepted member of the life department of the defendant. By one of the conditions in the policy it was provided, that "death of the member by his own hand or act, whether voluntary or involuntary, sane or insane at the time," was a risk not assumed by the defendant under the policy.

The complaint alleged that the policy was in force on the 19th of October, 1886, when Hall died at the city of New York, and that his death was not caused by any of the causes excepted from the operation of the policy. It was set up in the answer, as a defence, that the death of Hall was brought about by his own hand and act, in that he died from the immediate effect of a shot from a pistol fired by his own hand, such shot having been fired by him with the intention of taking his own life.

The case was tried before Judge Coxe and a jury, which rendered a verdict for the plaintiff for $5350. A motion for a new trial was made before Judge Coxe, and was denied, the opinion of the court thereon being reported in 35 Fed. Rep. 711; and a judgment was thereafter rendered in favor of the plaintiff for $5350, with interest and costs, the whole amounting to $5517.99. To review that judgment, the defendant has brought a writ of error.

By the bill of exceptions it appears that, after the plaintiff rested her case, the defendant moved the court to direct a verdict for it, on the ground that the plaintiff had failed to show that she ever had presented to it, in accordance with the provisions of the policy, satisfactory evidence of Hall's death; but the court denied the motion. The defendant excepted, and then proceeded to put in evidence on its part. After it had rested, the plaintiff put in rebutting evidence on her part, and

then the defendant put in further evidence. It is not stated in the bill of exceptions that it contains all the evidence; but it is set forth at the close of what does appear, that the defendant moved the court to direct a verdict for the defendant, on the ground that the evidence showed that Hall died by his own hand. The court refused to do so, and the defendant excepted.

Parts of the charge of the court to the jury are set forth; and it is stated that the court charged the jury as to all other features of the case fully and in such manner that no exception was taken thereto, and that the portions of the court's charge to the jury which are not set forth did not in anywise bear on, or relate to, any matters contained in the defendant's requests to charge, hereinafter referred to.

Among the instructions of the court to the jury were the following: "The only question upon this proof is, did Edward F. Hall commit suicide? If he did, the policy is void. If he died in some other way — by accident or assassination — it would be otherwise. Upon that issue, the burden is upon the defendant to satisfy you by a fair preponderance of proof of the truth of this defence. . . . When the policy of insurance was introduced with evidence or admissions that the premiums had been paid, and proof was given of the death of the assured, the plaintiff, if no further evidence had been produced, would have been entitled to a verdict; but the defendant comes into the court and asserts that the contract under which the action is brought has not been fulfilled, but has been violated by the assured. Being an affirmative defence, the onus is upon the defendant to satisfy you by evidence which, in your judgment, outweighs the evidence of the plaintiff, that that defence has been established."

The court, after stating that the defendant had introduced in evidence proofs of death furnished to it by the plaintiff, that the defendant insisted that the plaintiff, having produced those proofs, was estopped from saying that the cause of death there assigned was not truly assigned, and that such proofs asserted generally that Hall met his death by suicide while laboring under temporary aberration of mind, also instructed

the jury, that such proofs were proper evidence for them to consider, but were by no means conclusive evidence, and were to be taken by them in connection with the other testimony in the case, and given such weight in determining the main question as the jury might see fit to give them.

The court further instructed the jury, that the plaintiff's position was, first, that the burden being upon the defendant to satisfy them that Hall met death by his own hand, intending to kill himself, the plaintiff had a right to rely upon the alleged failure of the defendant to prove that fact; second, that it was asserted by the plaintiff that Hall's death might have been occasioned simply and solely by accident; and, third, that it might have been the result of assassination; and that, if the jury found that there was a failure on the part of the defendant to prove that Hall committed suicide, (whether he was in his right mind, or laboring under temporary insanity, being wholly immaterial,) or if they found upon the proofs that his death was caused by accident and nothing else, there must be a verdict for the plaintiff.

The defendant excepted (1) to the instruction that, on the question whether Hall committed suicide or not, the burden of proof was on the defendant to satisfy the jury by evidence which in their judgment outweighed that of the plaintiff, that his death was by suicide; (2) to the charge that the proofs of death were proper evidence in the case, but by no means conclusive; (3) to the submission to the jury of the question whether Hall died as the result of assassination, and to the charge that the evidence must be such as satisfied the jury of the truth of the fact in dispute.

Before the case was summed up to the jury by counsel, which was done before the giving of the charge, the defendant presented to the court fifteen several written requests to charge the jury. These requests are inserted in the bill of exceptions after the statement of the charge and the exceptions thereto, and it is stated, in regard to each of the requests, that the court refused so to charge "except as already charged," and that the defendant excepted to each refusal to charge.

Although there are twenty-five alleged errors set forth in

the assignment of errors filed in the court below, yet, as the brief of the plaintiff in error relies on but a few of them, we confine our attention to those thus relied on.

(1) One Andrew S. Brownell was examined as a witness for the defendant. At the time he was examined, in February, 1888, he was one of its directors, and had been its secretary in 1885. In December, 1886, he received, on behalf of the defendant, from one John Sherman Moulton, as agent of the plaintiff, certain proofs of death in the case. He testified that on that occasion he had a slight conversation with said Moulton on the subject of such proofs of death; that he (Brownell) looked at them and said they were incomplete, that the coroner's verdict did not accompany them; and that Moulton said it would be supplied in a few days. Brownell was then asked by the defendant: "Q. What was the substance of the understanding between you as to the manner in which Mr. Hall met his death, if that was mentioned between you?" His answer was: "A. That he had met his death by his inflicting a pistol shot, and that we must have the coroner's verdict, which he said would be furnished in a few days; and it came a few days later." Brownell was then asked by the plaintiff: "Q. Did you say to Mr. Moulton that you had known Mr. Hall well, in California, and that if it depended upon you the loss should be paid without any delay? Did you state that in that conversation or in any subsequent conversation?" This was objected to by the defendant as irrelevant, but the question was allowed and the defendant excepted. The answer was: "A. I think that I expressed such a personal feeling in the matter." He was then asked by the defendant: "Q. You say that you expressed such a personal feeling for Mr. Hall. What was your feeling as to your obligations to the defendant, in view of the risk excluded from the policy and the fact of the wound being self-inflicted? A. In view of the policy of the company, as shown in the certificate that has been presented here, the company could not pay it; it was against the policy of the company to assume the risk of a man's death by shooting or by self-inflicted wounds. Q. When you say that it was against the policy of the company, what do you mean by

that? A. Against the decision of the managers of the company as to the best interests of the company, taken as a whole. I did not mean the mere terms of the policy, but the settled course of business of the company."

It is contended by the defendant that the declaration by Brownell to Moulton that, if it depended upon him, (Brownell,) the loss should be paid without any delay, was irrelevant, and the admission of it in evidence constituted error. But we think the evidence was admissible. Brownell was a witness for the defendant, and the evidence in question was brought out on his cross-examination. He had stated on his direct examination that the substance of the understanding between him and Moulton, at the time the latter brought in the proofs of death, as to the manner in which Hall met his death, was "that he had met his death by his inflicting a pistol shot;" and the evidence in question, being drawn out on cross-examination, had a bearing upon the testimony which Brownell had given on his direct examination, implying that Moulton had stated that Hall met his death "by his inflicting a pistol shot." The evidence was as to a part of the same conversation; and we think it was relevant and competent.

(2) On the direct examination of Mr. Brownell as a witness for the defendant, he was asked the substance of a conversation which he had with one Charles W. Moulton, the agent or attorney of the plaintiff, in November, 1886, on an occasion when said Moulton, on behalf of the plaintiff, visited Brownell at the office of the defendant. The question was objected to by the plaintiff as immaterial, and was excluded, and the defendant excepted. A sufficient answer to this assignment of error is that the bill of exceptions does not state what the subject of the conversation was, or what was intended to be proved by it.

Charles W. Moulton was the father of John Sherman Moulton. Subsequently, when Brownell had been recalled by the defendant, and it had been proved that Charles W. Moulton was the plaintiff's agent, the question was repeated by the defendant as to what Charles W. Moulton said to Brownell when he visited the latter to make a claim on the defendant

for the payment of the $5000. The inquiry was again ruled out, it not being stated what the subject of the conversation was, or what was sought to be proved. The proofs of death were furnished to the defendant after this alleged conversation; and, even if the conversation related to the cause or manner of Hall's death, it could not bind the plaintiff, in the absence of any authority by the plaintiff to Moulton, to make any statement on the subject.

(3) It is contended by the defendant that the proofs of death, including the coroner's inquest, constituted an admission by plaintiff that Hall came to his death by his own hand, and that such admission was sufficient to create a legal right in the defendant to have a verdict directed for it. One of the defendant's requests to charge was that, the plaintiff, in her proofs of death, having stated to the defendant that the death was by suicide, it was incumbent upon her to prove, by a preponderance of evidence, that the statement was mistaken and that the death was the result of accident; and another was that, the plaintiff's proofs of death having been presented in her name, and by her agent in the matter, and constituting the essential preliminary to her action, they must stand as her acts, and the representations made therein must be taken as true, until at least some mistake was shown to have occurred in them.

The facts of this case are thus stated in the charge of the court to the jury, and there was no exception to such statement: " It appears to be undisputed that Edward F. Hall had lived about twenty years of his life in San Francisco. He frequently — habitually, perhaps — carried a pistol. He some time during his life kept a pistol under his pillow. He was a man of genial, sanguine temperament, hopeful — making plans as to the future — proud of his only son. But it also appears that, for a long series of years he had been suffering from severe headache — to such an extent that it created depression so strong at times that the doctor describes it as melancholia. It appears, further, that upon the evening prior to his death he was with a party of friends at the residence of Mr. Johnson, and there, in the presence of two or three witnesses, complained

of suffering intense pain in his head, frequently placing his hands to his head and complaining of the severe pain which he suffered.   The pecuniary circumstances of Hall have not been disclosed here, further than the evidence as to borrowing money of his sister.   It is in proof that he had a wife and son, his son in college, and that he took great interest in his future. But it is also proper that I should call your attention to the fact that at the moment of his death his wife was seriously ill — thought to be hopelessly ill — in a distant city.   Upon the morning of the 19th of October, 1886, at 139 East 21st street, in this city, and between 7 and 7.30 o'clock of that morning, Edward F. Hall was found in the back hall-bedroom of the fourth story, with a severe wound in his right temple.   The wound was so severe that it caused a comminuted fracture of the frontal bone, and fractures radiating up and down and backward from the hole in the right temple, sufficient, unquestionably, to produce his death.   He was found lying upon his bed with the clothes drawn up under the armpits, his limbs relaxed, no evidence of any struggle having taken place, and near his right hand, within a few inches or very near it, was the pistol, probably, which has been shown in your presence, with three of its chambers discharged.   There was also found upon his stand or desk a letter to his physician, in substance stating that he has been suffering terribly with headache, that he has had it for several days, that it is growing worse and has become wellnigh unbearable."

In the proofs of death furnished to the defendant, and signed by the plaintiff, was this question: " Was the death of deceased caused by his own hand or acts, or in consequence of a duel, or in violation of any law ? "   Her answer to this was: " See statement of coroner's physician, Dr. Jenkins."   In the statement of Dr. Jenkins was this question: " State the immediate cause of death."   His answer was: " Shock from penetrating pistol shot; wound of head (right temple); mental aberration superinduced by chronic headache."   There was also this question to Dr. Jenkins: " Was the death of deceased caused or accelerated or aggravated by his own hand or acts ? " His answer was: " I examined the deceased only as coroner's

physician, and therefore am unable to make any further statement than above, other than from the history. His mental condition was probably due to chronic headache, which was caused either by chronic meningitis or tumor of brain."

It is contended for the defendant that, because of the contents of the proofs of death, the plaintiff is estopped from claiming that Hall's death was caused otherwise than by suicide; and that, at least, the court should have held that the burden originally upon the defendant was shifted, by the introduction of the proofs of death, to the plaintiff, and it became her duty to satisfy the jury, by a preponderance of evidence, that Hall died otherwise than by his own hand.

But the defendant was not prejudiced by the statements and opinions contained in the proofs of death, and the plaintiff was not estopped thereby, as a matter of law. When the court was asked to charge the jury that by the introduction of those proofs the burden was shifted, the evidence was all before the jury, and was much more full and complete than that upon which Dr. Jenkins had based his opinion. He himself had been examined as a witness, and had testified as to what he knew or did not know at the time he made his certificate, and all the facts of the case, so far as they were known, had been explained in view of the contents of the proofs of death. It appeared that most of the statements in the certificate of Dr. Jenkins were based on hearsay. The instructions asked for in that respect, therefore, would have been erroneous.

Nor did the declarations in the proofs of death, when all taken together, necessarily amount to an admission that Hall committed suicide. The facts, or what Dr. Jenkins at the time supposed to be the facts, were stated in the proofs of death; and, although the defendant might have drawn therefrom the conclusion of suicide, they ought to be scrutinized carefully when they are sought to be used as amounting to an admission by the plaintiff that the policy was void. The language used by Dr. Jenkins in his certificate is not inconsistent with the theory of death by accident, especially in view of the fact, that when he came to the direct question as to whether

Hall's death was caused by his own hand or acts, he answered it by stating that he was "unable to make any further statements than above, other than from the history," the statements he had made above being that the "immediate cause of death" was "shock from penetrating pistol shot; wound of head (right temple); mental aberration superinduced by chronic headache." The jury were entirely at liberty to properly find that that wound, although self-inflicted, was accidental. The proofs of death and the entire evidence at the trial left it in doubt how Hall's death was caused, and it was for the jury to determine by their verdict. The court charged the jury that if they should find that Hall's death was caused by accident, they should find for the plaintiff. There was no exception to that instruction, and the case was tried on the theory that that was a correct construction of the policy. The 6th request of the defendant to charge was, that if the jury should find that Hall shot himself "in any manner except as by mere accident," the defendant was entitled to a verdict; the 10th request was, that the plaintiff had failed to give any evidence that the death was accidental; and the 12th request was, that the defendant was not bound to exclude every theory of accident.

(4) As to the exceptions to the charge of the court to the jury, we see no error therein. It is contended that there was no evidence from which the jury could find, as an affirmative fact, that Hall died by accident or assassination. In regard to this, as before remarked, the bill of exceptions does not purport to set forth all the evidence in the case. It was conceded that if Hall's death was by accident or assassination, the policy covered it, and, on the evidence given in the bill of exceptions, we think the jury were fully warranted in finding that it was by accident. The defendant having alleged in its answer that Hall's death was due to one of the causes excepted from the operation of the policy, it was not error for the court to charge the jury that the defendant was bound to establish such defence by evidence outweighing that of the plaintiff.

We think the court properly refused to charge in accordance with the requests made by the defendant, except as it

Opinion of the Court.

had already charged; and that it had already charged in terms sufficiently full and correct, as to the particulars now insisted upon to have been erroneous.

*Judgment affirmed.*

MR. JUSTICE BROWN dissenting. Upon the facts stated in the opinion of the court I think the jury should have been instructed to return a verdict for the defendant.