# SOMERVILLE

*v.*

# THE KNIGHTS TEMPLARS AND MASONS' LIFE INDEMNITY ASSOCIATION.

LIFE INSURANCE; SUICIDE; PRESUMPTIONS; VERDICT, DIRECTION OF BY TRIAL COURT.

1. A stipulation in a policy of insurance relieving the insurer of liability, except for assessments paid, in case of the suicide of the insured, whether voluntary or involuntary, sane or insane, is valid and will be given effect according to the terms of the contract.

2. If in a suit on a policy of insurance containing such a stipulation where the defence is suicide, the evidence is so clear as to exclude any other rational hypothesis than that of suicide as the cause of death, the ordinary presumption against the fact of suicide will not be allowed to counteract and destroy the rational conclusion deducible from such clear and definite proof, and it is proper for the trial court to direct a verdict for the defendant.

No. 681. Submitted October 8, 1897. Decided November 4, 1897.

HEARING on an appeal by the plaintiffs from a judgment on a verdict directed by the court in an action on a policy of insurance. *Affirmed.*

The COURT in its opinion stated the case as follows:

This action was brought upon a policy of life insurance,

11 Ct. App.—28.

issued by the defendant, the Knights Templars and Masons' Life Indemnity Company, to Frank Schwarz, on the 13th of June, 1892, for $5,000. Schwarz, the holder of the policy, was found dead on the morning of the 30th of December, 1892; and up to the time of his death he had paid all the assessments called for, amounting to the sum of $19.50. The wife of the deceased was the original beneficiary in the policy of insurance, but the assured, on the 15th of October, 1892, procured the policy to be transferred to his personal representatives, but for what reason does not appear. The present action is brought by the executors of the deceased, and the recovery was for the $19.50 only, the amount of the assessments paid.

The defence to the action was that the deceased, Schwarz, came to his death by self-destruction or suicide, and therefore, under a condition of the policy, the plaintiffs were not entitled to recover more than the $19.50.

Among the conditions or stipulations contained in the policy is the following:

"In case of the self-destruction of the holder of this policy, whether voluntary or involuntary, sane or insane, this policy shall become null and void and the widow or heirs or beneficiaries of said member shall have no claim for benefits on this company. Provided that in the case of such self-destruction or suicide of the holder of this policy, then this company will pay to his widow or heirs or devisees only such an amount on this policy as the member shall have paid to this company on this policy in assessments on the same, without interest. Upon violation of any of the foregoing conditions this policy shall be null and void, without action on the part of the company or notice to the insured or beneficiary, and all payments made hereon and all accrued surplus or profits shall be forfeited to the company, except as above provided."

There is no controversy whatever in regard to the facts of the case, the question being whether the facts shown clearly

proved that the assured committed suicide.    The plaintiffs, upon the proof of death of the assured, and the policy held by him, and that he had paid all assessments called for by the defendant, rested their case.    And the defendant then gave evidence of the facts and circumstances that tended to show how the assured came to his death.    These facts and circumstances are very clearly and concisely stated in the bill of exception, and we shall repeat them as there stated:

"Thereupon the defendant, to maintain the issues on its part joined, gave evidence tending to prove that the dead body of the insured, Frank Schwarz, was found by a police officer of the city of Washington on its back, feet being toward the east, in the early morning of December 30, 1892, rigid and the clothing covered with frost, in an open field just beyond the boundary of the city of Washington, District of Columbia; that on the left hand there was a kid glove, which hand held in its grasp the fellow glove, and that the right hand was ungloved; that a revolver, from which one shot had been fired, lay upon the ground about two feet from the right hand; that his watch and chain, pocket-book, and other valuable articles were found undisturbed upon the body of the deceased; that a pistol shot had penetrated his left breast just above the heart, which caused his death; that the body was clothed in underclothes; a suit of ordinary outer clothing, and an overcoat; that there was no sign of scorching or burning on the clothing; that there were no marks of footprints on the ground near or nearby the body which would indicate that there had been a struggle or altercation.    The body was taken to the morgue in the city of Washington by the police of said city, and it was admitted by the plaintiffs to be the body of Frank Schwarz.    Further, it was admitted by the stipulation of the parties that the deceased, on the 29th day of December, 1892, was indebted to the Anheuser-Busch Brewing Company in the several sums mentioned in a proof

of debt filed by said company in the office of the register of wills of this district; that said proof showed that the deceased at various times from February, 1892, to December 31, 1892, had collected as agent of said company various sums on accounts and notes of that company for which he had not accounted, and which amounted in the aggregate, with interest, at the time of his death to the sum of $2,843.93.

"Further, the defendant gave evidence from the policy that on the 15th day of October, 1892, the deceased had transferred the policy in question from his wife, who was the original beneficiary thereof, to his personal representative. Further, the defendant gave in evidence a letter which it was admitted in the stipulation Schwarz on December 29, 1892, wrote, signed and transmitted to Robert T. Heiston, one of the plaintiffs, a copy of which letter is as follows:

"Dec. 29, 1892.

" My Dear Robert: When this reaches you your friend will be among the great army of the other world. I find that I cannot exist any more. Your check to-morrow and some other obligations are all piling up, and I cannot meet them. There are also some other matters which must be adjusted and which I ask that you arrange as best you can. As to Anheuser-Busch matter, Vinton can give you information about them. I know there is enough property, etc., here to cover my obligations, and were I as good a borrower as I am or have been a lender things might go different. Bob, dear fellow, do for me what I would have done for you, and when some one says an unkind word I know you will say a kind one instead. All the papers herewith are arranged so that you can use them with effect towards liquidating my indebtedness to you, which I assure you is my sole object. Have me buried quickly and quietly and forget me afterwards. I have imposed the disagreeable task upon you and Br. Somerville to act as my executors. Good-bye.                " Frank.

"Let Walter sell the horses and you use the money to settle up matters."

It was further admitted that said Hieston received the letter just recited, together with other papers, through the mail, on the morning of December 30, 1892; and thereupon the evidence was closed, and no further or other evidence was offered by either side.

Upon the foregoing evidence the court, at the instance of the defendant, instructed the jury that their verdict should be for the defendant, in respect to the plea or defence of suicide of the assured, but, by the terms of the policy, the plaintiffs were entitled to recover $19.50, without interest, that being the amount of the assessments paid by the assured.

*Messrs. R. Ross Perry & Son* for the appellants:

1. It is well settled that the presumption of law is against suicide when death can be referred to any other cause. In such a case suicide is peculiarly a fact for the jury. *Home Benefit Ass'n* v. *Sargent*, 142 U. S. 691; *Casey* v. *National Union*, 3 App. D. C. 510; *National Union* v. *Thomas*, 10 App. D. C. 277; *Insurance Co.* v. *McConkey*, 127 U. S. 661, 667; *Mallory* v. *Insurance Co.*, 47 N. Y. 52; *Pierce* v. *Insurance Co.*, 34 Wis. 389; *Shank* v. *United Brethern*, 84 Penn. St. 385; *Newton* v. *Insurance Co.*, 2 Dill. 154; *Insurance Co.* v. *Bennett*, 90 Tenn. 256; May on Insurance, Sec. 325.

2. Since in the present case the defendant admits the issuance of the policy and the payment of premiums due thereon by the insured, the burden of proof is on it to prove that the death of the insured was brought about by a cause excepted from the operation of the policy. *National Union* v. *Thomas*, 10 App. D. C. 277; *Home Benefit Ass'n* v. *Hall*, 142 U. S. 691.

In *Leman* v. *Insurance Co.*, 46 La. An. 1189, it is said that when circumstantial evidence alone is relied on to establish suicide, it is at least within bounds to say the evi-

dence must be of a character to exclude with reasonable certainty any other cause of death.

*Messrs. Needham & Cotton* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

The only error assigned on this appeal is, that the court was not warranted in taking the case from the jury, in respect to the right of the plaintiffs to recover the amount of the policy sued on. And the question to be considered is, whether there was evidence sufficient to justify the jury in finding that the assured came to his death from other cause or causes than suicide. If the evidence was not sufficient to justify such finding, but was clear to the fact that the cause of death was suicide, there can be no question of the correctness of the court's ruling in taking the case from the jury.

It is well settled that a condition or stipulation, such as we have recited from the policy in this case, to avoid liability in case of suicide of the assured, sane or insane, is valid, and must be given effect by the courts, according to the terms of the contract of the parties. In the case of *Bigelow* v. *The Berkshire Life Ins. Co.*, 93 U. S. 284, it was expressly held, that a stipulation in a life insurance policy that it should be void if the insured should die by suicide, *sane or insane*, was valid; and that it was no answer to such a stipulation that the insured was of unsound mind and wholly unconscious of the act. There are other cases that hold the same principle.

The only question, therefore, is whether the evidence of suicide is so clear and definite as to preclude all reasonable doubt of the fact, or, in other words, whether the evidence is so clear as to exclude any other rational hypothesis than that of suicide as the cause of death. Mere wild, irrational conjecture as to the cause of death will not suffice to over-

come clear and definite proof. It is true that, in case of real doubt, the presumption is against the fact of suicide. But where the evidence is all on one side, and that of a character to establish beyond a reasonable doubt the fact that suicide has been committed, the ordinary presumption opposed to that fact can not be allowed to counteract and destroy the rational conclusion deducible from such clear and definite proof.

Here, the claim of the plaintiffs is attempted to be supported upon the surmise that the assured may have come to his death by accident, or by the hand of a robber, or in conflict with some unknown person. But each and every circumstance in proof tends directly, and with a force that can not be resisted, to repel such hypothesis. The writing and mailing of the letter, the circumstances referred to therein as inciting him to the desperate and fatal act, and the plainly expressed intention of ending his life by his own hand, followed within a few hours by the clearly apparent execution of his predetermined purpose, can leave no room for possible doubt as to the real cause of his death. Then, too, the time and place of his death, and the evidence that the pistol had been used by his ungloved right hand, and the entire absence of any circumstance whatever that would indicate accident, or that there had been a conflict with any other person, all force the mind irresistibly to the conclusion that the cause of death was suicide. Indeed, if this proof does not clearly and beyond rational doubt establish the fact of suicide, there is no such thing as establishing such fact except it be by occular proof furnished by witnesses who were present at the scene of death. There is no case where the presumption against the fact of suicide has ever been indulged to such an extent.

We think the court below was quite right in withdrawing the case from the jury, and directing a verdict for the defendant, as was done. A verdict for the plaintiffs, upon the facts of this case, would have been without the slightest evi-

dence to support it, and grossly against evidence, and it would, consequently, have been the duty of the court to set such verdict aside.  A case presenting such state of facts as the present simply requires the court to relieve the jury of all consideration of it; and this is the settled principle in the practice of the courts of this District, and of the courts of the United States generally.   *Pleasants* v. *Fant*, 22 Wall. 116; *Prigg* v. *Lansburgh*, 5 App. D. C. 30; *Hendrick* v. *Lindsay*, 93 U. S. 143; *Randall* v. *Railroad Co.*, 109 U. S. 478; *Elliott* v. *Railroad Co.*, 150 U. S. 245, 247; *Union Pacific R. Co.* v. *McDonald*, 152 U. S. 262; *Phœnix Ins. Co.* v. *Doster,* 106 U. S. 30.

The cases relied on by the plaintiffs as giving support to their contention are those of *Home Benefit Asso.* v. *Sargent*, 142 U. S. 691, and *National Union* v. *Thomas*, 10 App. D. C. 277.   But those cases are distinguishable in their circumstances from the present case.   It may be said, however, of both those cases, that they stand upon the extreme border line of the principle requiring the facts to be submitted to the jury; and the first of those cases was not decided by unanimous opinion.   They should therefore stand on their own special circumstances, and not be invoked as precedents except upon an exactly similar state of facts.

The judgment must be affirmed; and it is so ordered.

*Judgment affirmed.*