### SHARLAND v. WASHINGTON LIFE INS. CO.

(Circuit Court of Appeals, Fifth Circuit. April 10, 1900.)

No. 856.

1. LIFE INSURANCE—ACTION ON POLICY—EVIDENCE OF SUICIDE.

A copy of the findings on a coroner's inquest, furnished by the beneficiary in a life insurance policy as a part of the proofs of death of the insured, is admissible on behalf of the insurance company, in an action on the policy, as prima facie evidence to establish a defense of suicide.

2. SAME.

In an action on a life insurance policy, the defense being suicide, where it was shown that the insured was found dead in his room under circumstances indicating suicide, any evidence tending to throw light upon the motives and intentions of the deceased in that regard, such as letters and directions written by him, and also found in his room at the same time, or other letters in his possession shortly before the time of his death, is admissible.

3. SAME—MEASURE OF PROOF REQUIRED.

Where the special defense of suicide is set up in the answer of a life insurance company in an action on a policy containing a provision that the company should not be liable in case the insured committed suicide while sane or insane, the defendant is required to establish such defense by a preponderance only of the evidence.

4. SAME—INSTRUCTIONS.

An instruction that the presumption of law is against suicide is sufficient, and the court cannot be required to give to the jury the reasons on which such presumption rests.

In Error to the Circuit Court of the United States for the Eastern District of Louisiana.

Upon Ernest Sharland's application, two policies on his life, each for the sum of $5,000, payable in favor of his wife, the plaintiff in error, were issued by the Washington Life Insurance Company, each policy being dated November 12, 1896. This action is brought to recover the amount of said policies.

Ernest Sharland, the assured, died in the city of New York on November 9, 1897, leaving the plaintiff in error as his widow, and a minor child, named Violet, aged about 2 years. The defendant company admitted the execution of the policies, but denied indebtedness thereunder, for the reason, as alleged in the answer, "that the assured, Ernest Sharland, did not die a natural death, or death due to accidental causes, but that the said Ernest Sharland, the assured, did on or about the 9th day of November, 1897, before the expiration of one year after the execution of said policies, deliberately, and with malice aforethought, commit the crime of suicide." The application for the policies contained, among other agreements, the following, to wit: "On behalf of myself, and any person who shall have or claim any interest in any policy issued under this application, I warrant each of the above answers to be full, complete, and true, and I agree:  *  *  *  (4) That for one year after the date of issue of the policy  *  *  *  self-destruction, while sane or insane, or death in consequence of a duel or criminal violation of the law, will render the policy void." The policy contains the following clause, to wit: "That for one year after the date of the issue of the policy  *  *  *  self-destruction, while sane or insane, or death in consequence of a duel or criminal violation of law, will render the policy void."

On the trial in the circuit court, "the plaintiff having offered in evidence two policies of insurance on the life of Ernest Sharland, each for five thousand ($5,000) dollars, numbered, respectively, 97,023 and 97,024, dated November 12, 1896, issued by the defendant, and made payable to the plaintiff, being the policies sued on in the instant case; and also having offered the admissions of the parties in interest that Ernest Sharland died in New York on November 9, 1897, and that he left the plaintiff as his widow, and one minor child, named Violet, aged about two years; and it having been admitted by counsel for the plaintiff and for the defendant that the premiums on the policies above referred to were paid for one year from the date of issuance; that all of said above referred to documents and admissions were received in evidence without objection; and the plaintiff having rested her case upon the evidence above referred to,—counsel for defendant offered in evidence the proofs of death furnished to the defendant company by the plaintiff, including a certified copy of the coroner's inquest, marked 'P2' and 'P3,' respectively, to which offer counsel for plaintiff objected, on the grounds that the same was and is immaterial and irrelevant; that the coroner's inquest is res inter alios acta: that there is no proof of its execution; that it does not make proof of itself; and that it is merely an expression of opinion by the parties therein named,—counsel stating that this objection was principally to the coroner's inquest."

Whereupon counsel for defendant stated that the copy of the coroner's inquest is a part of the proofs of death furnished by the plaintiff to the defendant company, and urged that, the plaintiff having furnished the proof, the same is admissible; that it was a part of the case, and pertinent. Whereupon the court observed and said, in the hearing of the jury: "The whole underlying thought about the admissibility of evidence is this: that evidence which the law does not forbid directly may be considered by the court, and admitted, in its discretion. If it is addressed to some matter issuable in the case, and is forbidden, that ends it in the case. If this evidence is material, and not forbidden, I will admit it for whatever it may be worth." Whereupon counsel for plaintiff urged: "That the coroner's inquest should not be allowed to go into the case at all. These papers were furnished by the plaintiff, it is true, but she was called upon to produce them." Whereupon the court observed and stated as follows: "The paper (the coroner's inquest) may be found full of suggestion on the merits of the case. It may afford a suggestion of fact which the plaintiff is not or may not be bound by, but may be of some value to the defendant in the suggestion of fact. Therefore the court admits it for whatever it may be worth." The execution of the coroner's inquest was subsequently proved by the testimony of the coroner. To which ruling of the court, admitting the said proofs of death and certified copy of the coroner's inquest, marked "P2" and "P3," respectively, which are annexed hereto and made part of this bill, counsel for plaintiff then and there excepted as error on the part of the court.

And the plaintiff having rested her case upon the evidence above referred to, and the defendant having offered, and being about to read, the depositions of Dr. W. Edwin Oakes, Mrs. Louisa Wilmerding, Walter Clark, and William H. Dobbs, all taken under commission in New York City, and it appearing from the answers of the said witnesses that the said Dr. W. Edwin Oakes testified, in answer to interrogatories propounded to him, that he saw the body of the deceased in his room shortly after it was discovered; that he had seen letters to or from the deceased at the time he saw the body of the deceased; and having further testified that the said letters were on the dressing table of the deceased; that one purported to be from the wife of the deceased, in New Orleans, addressed to "Mon Cher Ernest," the whole letter being written in French, with which language the witness testified he was not familiar further than that he could read the address; that there were two other letters, which he did not read, one of them being to the stage manager of the Bijou Theatre, in New York, whose name the witness testified he had forgotten, but which was published in the New York Herald on November 10, 1897, which letter was sealed; that the witness did not see to whom the other letter was addressed; that the police officer came in at that time, and took charge of the correspondence and all the personal effects of the deceased; that the witness did not know what the police officer had done with the letters, or where they were, at the time the witness testified; and the witness having testified that the letter which he mentioned as being written in French was read by Mrs. L. R. Wilmerding, who translated it aloud, and in his presence and hearing. And it appearing from the answer of Walter Clark, another witness on behalf of defendant, that he testified that he saw the body of the deceased in his room shortly after it was discovered; that he saw two letters at the time that he saw the body of the deceased, one letter being apparently from his wife and another from another woman; that the letter from his wife was written in French and the other in English; that there was also another letter, which was sealed, and addressed to the manager of the Bijou Theatre, in New York City, and a package about four inches square, also sealed, to be delivered to him; that the said letters were on the table in the room, and that two of the letters were addressed to the deceased; that he did not know where the letters were at the time he testified, or what was done with them; that he was a police officer, and remained in the room until relieved by another officer at 6 o'clock in the evening in question; that the said letters were read by Mrs. Wilmerding in his presence, and that she translated the letter written in French. And Mrs. Louisa R. Wilmerding having testified that she discovered the body of the deceased in his room, and was the first to see it after death; that she saw a letter from the wife of the deceased written in French, which she translated at the request of Dr. Oakes and the policeman; that she saw another letter, which was addressed to the manager of the Bijou Theatre, in New York City, and a notice asking that he be sent for, and another letter addressed to him; that the letter from the wife of the deceased was lying on the dressing table beside the bed, and with it was a photograph of her, which had written on the back of it "My Wife," and her full name and address in New Orleans; that the other letters were on the bureau, and that there were two unmounted pictures of a child in the pocket of the pajamas of the deceased; that she did not know where the letters were at the time she testified, nor what was done with them; that she only read the letter which was in French, and which she translated in the presence of Dr. Oakes and the policeman. And it appearing that the said witnesses, in answer to interrogatories propounded to them, proceeded to state the substance of the letter purporting to be from assured's wife to him, counsel for plaintiff, before the said answers were read to the jury, objected to the answers of the said witnesses giving the substance of said letters being read to the jury, on the ground that there was no proof of the signatures to the said letters. Whereupon counsel for defendant produced an admission, signed by counsel for plaintiff and defendant, as follows, to wit: "It is admitted that if Mrs. Louise Sharland, the plaintiff in the above-entitled and numbered cause, were called as a witness on behalf of the defendant, she would testify that about three or four weeks prior to the death of her husband she received from him, he being then in the city of New York, a letter

in which he threatened to take his life; that she thereupon wrote to her husband a letter substantially as testified to by Mrs. Louisa R. Wilmerding, a witness on behalf of the defendant; that she, the said Mrs. Sharland, destroyed the letter which she received from her husband shortly after its receipt; that the letter above referred to, which she wrote to her husband, was returned to her in an envelope bearing the stamp of the police department of the city of New York, and marked, 'Letter found in room of Ernest Sharland, 509 5th Ave.,' annexed to this admission, and marked Exhibit 'A,' and was also destroyed by her; that the said envelope and its contents were forwarded to her, with some of the personal effects of her said husband. It is further admitted that the said Mrs. Sharland would testify that the two pieces of paper, with writing thereon, marked, respectively, Exhibits 'B' and 'C,' were also contained in the above referred to envelope, marked Exhibit 'A'; that she recognizes the handwriting of the said Exhibits 'B' and 'C' as being that of her husband. It is further admitted that the said Mrs. Sharland would also testify that at his death her said husband left no property. It is agreed that the above and foregoing admission can be used on the trial of this cause in lieu of the testimony of the witness referred to, reserving to each party the right to object to the admission of the testimony, the same as though the witnesses were present in court and were being interrogated." Whereupon counsel for defendant renewed the offer of the testimony of the witnesses referred to, and particularly the answers of said witnesses giving and stating the substance of said letter, and also offered in evidence the above admission, and the two documents referred to therein, marked "P5" and "P6" (also marked Exhibits "B" and "C"), together with the envelope in which they are inclosed, indorsed, "Letters found in room of Ernest Sharland, 509 5th Ave." Whereupon counsel for plaintiff objected, on the grounds that the letters and documents referred to were not part of the res gestæ; that the contents of the letters were irrelevant and immaterial. But the court overruled the objection, and permitted the said answers of the said witnesses, giving the substance of said letters and the above admission, to be read to the jury, and also permitted the said documents and envelope likewise to be read to the jury; to all of which counsel for plaintiff at the time then and there excepted as error on the part of the court.

The evidence being closed, the plaintiff requested the court to give to the jury the following charges:

"(1) In this case, the plaintiff having declared upon two life insurance policies issued by the defendant company on the life of plaintiff's husband, payable in her favor, and the defendant having admitted the issuance of the policies and the death of the person insured, but having set up as a special defense that it was excused or relieved from the payment of the amount due under the policies for the reason, as alleged by the defendant, that the husband of the plaintiff violated one of the conditions of the policies by willfully and intentionally committing suicide, the burden was and is on the defendant to establish the fact of such willful and intentional suicide or taking of his life by Ernest Sharland, the husband of the plaintiff, by evidence which would exclude with reasonable certainty any other hypothesis or cause of death than by such willful and intentional suicide.

"(2) 'Suicide' is the willful and voluntary taking of one's own life by a person who understands the physical nature of the act, and who commits the act with the intention and purpose of destroying himself or taking his own life.

"(3) Suicide is never presumed, but must be affirmatively established by the party alleging the suicide. In order to establish the suicide, it must be shown that the act or thing which caused the death of the person was done or committed by him with the design and purpose of taking his own life, and not through accidental or other external causes.

"(4) If you find that the body of the deceased was found under such circumstances that the death may have resulted from negligence, accident, murder, or suicide, the presumption is against suicide, as contrary to the general conduct of mankind, and gross moral turpitude, not to be presumed in a sane man.

101 F.—14

"(5) You are not to give any weight to the findings by the coroner of the city of New York. You must reach your conclusions from the facts testified to in this case, irrespective of any conclusions reached by the coroner."

Whereupon the court charged the jury as follows, to wit: "The plaintiff in this case has the burden on herself of showing the contract under the policies and the death of the deceased. That much has been shown, and, as a matter of fact, been admitted by the defendant. The case of the plaintiff would be made out by that showing and admission, but for the denials in the defenses set up by the defendant. The defendant admitting the death, and admitting the obligation under the contract, sets up as a special defense that the contract is not enforceable in this case, because the assured, Sharland, committed suicide in the city of New York. Under the terms of this policy, this defense is good, if sustained by the proof. ˙On that defense the defendant has the burden of proof. The defendant is required to make out its case on that defense by a preponderance of proof; that is, to make you, by its proof, or the proof in the case, believe that its defense has been established with a reasonable degree of certainty. It does not have to establish its case, as was suggested by counsel, as if this was a criminal case, where the party was charged with murder, beyond a reasonable doubt. It must establish that defense by a preponderance of testimony. You will take up the testimony offered by the defendant, and test it by the rule I have just suggested. On the evidence offered by the defendant showing suicide, your inquiry will be, has the defendant shown by a preponderance of evidence that Sharland committed suicide, whether he was then sane or insane? If the defendant has shown that by a˙preponderance of testimony, you must find for the defendant. If the defendant has failed to establish that by a preponderance of testimony, you must find for the plaintiff. The evidence offered by the defendant will lead you into the room in the city of New York where the deceased was found, and that evidence will illustrate, one way or the other, the question as to whether Sharland committed suicide or not. It is upon that and all the other evidence in the case that you must reach your verdict, one way or the other, on that issue."

But the court refused to give the charge firstly requested by counsel for plaintiff in the words as requested, but instead thereof charged the jury in the words following, to wit: "In this case, the plaintiff having declared upon two life insurance policies issued by the defendant company on the life of plaintiff's husband, payable in her favor, and the defendant having admitted the issuance of the policies and the death of the person insured, but having set up a special defense that it was excused or relieved from the payment of the amount due under the policies for the reason, as alleged by the defendant, that the husband of the plaintiff violated one of the conditions of the policies by willfully and intentionally committing suicide, the burden was and is on the defendant to establish the fact of such willful and intentional suicide or taking of his life by Ernest Sharland, the husband of the plaintiff, by evidence which, by the preponderance in favor of defendant, shows you satisfactorily that the deceased committed suicide."

And the court gave the charges secondly and thirdly requested by counsel for plaintiff. But the court refused to give the charge fourthly requested by counsel for plaintiff in the words as requested, but instead thereof charged the jury in the words following, to wit: "If you find that the body of the deceased was found under circumstances that the death, so far as the evidence shows the cause thereof, may have resulted as reasonably from negligence, accident, murder, or suicide, the presumption is against suicide, because suicide is contrary to the general conduct of mankind." And the court refused to give the charge fifthly requested by counsel for plaintiff.

Whereupon counsel for plaintiff at the time then and there excepted to the charge of the court firstly hereinbefore set out, and particularly to the portion of said charge contained in the words following, as error on the part of the court, to wit: "The defendant is required to make out its case on that defense by a preponderance of proof; that is, to make you, by its proof, or the proof in the case, believe that its defense has been established with a reasonable degree of certainty. It does not have to establish its case, as was suggested by counsel, as ˑif this was a criminal case, where the party was

charged with murder, beyond a reasonable doubt. It must establish that defense by a preponderance of testimony. You will take up the testimony offered by the defendant, and test it by the rule I have just suggested. On the evidence offered by the defendant showing suicide, your inquiry will be, has the defendant shown by a preponderance of evidence that Sharland committed suicide, whether he was then sane or insane? If the defendant has shown that by a preponderance of testimony, you must find for the defendant. If the defendant has failed to establish that by a preponderance of testimony, you must find for the plaintiff. The evidence offered by the defendant will lead you into the room in the city of New York where the deceased was found, and that evidence will illustrate, one way or the other, the question as to whether Sharland committed suicide or not. It is upon that and all the other evidence in the case that you must reach your verdict, one way or the other, on that issue." And counsel for plaintiff further at the time then and there excepted to the refusal of the court to give the charge firstly requested by him, in the words as requested, as error on the part of the court. And counsel for plaintiff also and further at the time then and there excepted to the refusal of the court to give the charge fourthly requested by him, in the words as requested, as error on the part of the court. And counsel for plaintiff also and further at the time then and there excepted to the refusal of the court to give the charge fifthly requested by him as error on the part of the court.

Whereupon the court further charged the jury in the words following, to wit: "I wish to call your minds back to this fact: After weighing the evidence offered by the defendant on the issue of suicide vel non, if you find that the defendant has established its defense by a preponderance of evidence, preponderating in favor of the side of the defendant, you will find for the defendant, bearing in mind the other modifications I have given you in the charges." Whereupon counsel for plaintiff at the time then and there excepted to the said last charge immediately above written, and to the giving thereof, as error on the part of the court. The assignments of error are based on the rulings of the court as above set forth.

J. Zach Spearing, for plaintiff in error.

Chas. E. Fenner, Chas. P. Fenner, and Sam Henderson, for defendant in error.

Before PARDEE and SHELBY, Circuit Judges, and MAXEY, District Judge.

After stating the case as above, PARDEE, Circuit Judge, delivered the opinion of the court.

The coroner's inquest, made a part of the proofs of death as presented by the plaintiff to the defendant company, was admissible in evidence. Insurance Co. v. Newton, 22 Wall. 32, 22 L. Ed. 793; Insurance Co. v. Higginbotham, 95 U. S. 380, 24 L. Ed. 499; Richelieu Nav. Co. v. Boston Ins. Co., 136 U. S. 435, 10 Sup. Ct. 934, 34 L. Ed. 398. See, also, Association v. Sargent, 142 U. S. 691, 12 Sup. Ct. 332, 35 L. Ed. 1160; Steamship Co. v. Tugman, 143 U. S. 31, 12 Sup. Ct. 361, 27 L. Ed. 87; Crotty v. Insurance Co., 144 U. S. 621, 626, 12 Sup. Ct. 749, 36 L. Ed. 566.

In Insurance Co. v. Newton, supra, the second headnote fairly states what was decided, and is as follows:

"(2) The preliminary proofs presented to an insurance company, in compliance with the condition of its policy of insurance, are admissible as prima facie evidence of the facts stated therein against the insured and on behalf of the company."

In Insurance Co. v. Higginbotham, supra, we find:

"The effect of facts set forth in preliminary proof as admissions is discussed in Insurance Co. v. Newton, 22 Wall. 32, 22 L. Ed. 793. Where an agent of the insurance company stated that the proofs were sufficient to show the death of the insured, but that they showed that he committed suicide, it was held that the whole admission must be taken together. Where the party or her agent stated in the preliminary proofs that the deceased had committed suicide, furnishing the verdict of a coroner's jury to that effect, and where the narration of the manner of the death of the deceased was so interwoven with the death of the deceased that the two things were inseparable, it was held that the whole was competent to go before the jury. We see no occasion to question the positions of that case."

In Richelieu Nav. Co. v. Boston Ins. Co., supra, a maritime protest, consisting of statements signed by the master, mates, and wheelmen, against storm, heavy winds, and gales, high and dangerous seas, fogs, and defective compass, etc., was held admissible in a suit on an insurance policy, and the court says:

"But it was admissible in this case, not on the ground of agency, but because it was made part of the proofs of loss; being directly referred to in the proofs in the statement that the vessel ran ashore, 'and became a wreck and total loss, and was duly abandoned by the owners to her insurers, as will appear by certified copy of the protest of her master and mariners, heretofore served upon you.' Hence the admission of the proofs of loss involved the admission of the explanatory writing."

In Association v. Sargent, supra, proofs of death containing the statement of the coroner's physician, which tended to show suicide, were admitted, and one of the questions passed upon was whether such proofs did not estop the plaintiff from proving the contrary, and it was held (Mr. Justice Brown dissenting) that the proofs of death, as furnished in that case, were not conclusive, but no question whatever was made or suggested as to the propriety of their being admitted in evidence as an entirety. These authorities are conclusive in this court, and it is needless to review the decisions of the various state courts on the same subject.

The contents of certain letters, which were found in the room of the deceased, Ernest Sharland, at the time his body was there discovered, and an envelope of the police department of the city of New York in which the letters were subsequently put, and two pieces of paper containing writings in the hand of the deceased, were admitted in evidence over the objections of the plaintiff. The issue in the case was whether the assured committed suicide. From undisputed facts, it appears he was found dead in his bed at about 4 o'clock in the afternoon on November 9, 1897, in his room at 509 Fifth avenue, New York; that he died from asphyxiation by illuminating gas; that when his room door was forced it was found that the two gas cocks in the room were both turned on; that the rugs which were in the room had been piled against the door, evidently for the purpose of preventing egress of gas and ingress of air; that the assured was lying upon the bed dressed in a suit of pajamas, in the pocket of which was a picture of his child; that on the dressing table, opposite the bed, was a photograph of his wife, which had written upon it, "My Wife," and her full name and address; that on this dressing table there was also a letter from his wife,

written in French; and that on the bureau were found two papers in the handwriting of the deceased, one an unfinished letter of farewell to his child, dated November 3, 1897, and the other was a request to send for a Mr. Bernard at a given address, and to mail the sealed letters, which were also on the bureau. It is admitted that the letter from his wife was written in response to a previous letter from him threatening suicide. The contents of the letter and the documents in the handwriting of the deceased tended to show that the assured was intending to commit suicide. The envelope of the police department of the city of New York, mentioned, was evidently offered as part of the identification of the documents. Bearing in mind that the issue was whether the assured committed suicide, we are of opinion that the evidence was properly admitted. . Counsel for plaintiff in error argues that, as the letters and documents were not made at the time of the act done, they constituted no part of the res gestæ, and were therefore inadmissible. It would seem that the papers written by the assured and the letters found in his close possession, shortly before and at the time of his death, would be the very best evidence to show the condition of his mind and the acts which he was then contemplating. Exactly what constitutes the res gestæ in a case of this kind need not be determined. Whatever throws light upon the motives and intentions of the assured, found dead under such circumstances, seems clearly admissible.

In regard to the instructions to the jury asked and refused by the court, we notice the first complaint is that the court refused a charge instructing the jury that, as the defense to the suit on the policies was suicide, the burden was on the defendant to establish the fact of such willful and intentional suicide by evidence which would exclude with reasonable certainty any other hypothesis of the cause of death than by such willful and intentional suicide. In the first place, it is to be noticed that the agreement in the policies was not limited to willful or intentional suicide, but included self-destruction while sane or insane. The court, while refusing the charge as requested, charged the jury as follows:

"The plaintiff in this case has the burden on herself of showing the contract under the policies and the death of the deceased. That much has been shown, and as a matter of fact been admitted by the defendant. The case of the plaintiff would be made out by that showing and admission, but for the denials in the defenses set up by the defendant. The defendant, admitting the death and admitting the obligation under the contract, sets up as a special defense that the contract is not enforceable in this case, because the insured, Sharland, committed suicide in the city of New York. Under the terms of this policy, this defense is good, if sustained by the proof. On that defense the defendant has the burden of proof. The defendant is required to make out its case on that defense by a preponderance of proof; that is, to make you, by its proof, or the proof in the case, believe that its defense has been established with a reasonable degree of certainty."

This covered the case, and was correct. See Association v. Sargent, supra; Insurance Co. v. McConkey, 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308.

The next complaint as to the charge is that the court refused to charge the jury as follows:

"If you find that the body of the deceased was found under such circumstances that death may have resulted from negligence, accident, murder, or suicide, the presumption is against suicide, as contrary to the general conduct of mankind, and gross moral turpitude not to be presumed in a sane man."

While refusing this precise charge, the court gave the following:

"If you find that the body of the deceased was found under such circumstances that death, so far as the evidence shows the cause thereof, may have resulted as reasonably from negligence, accident, murder, or suicide, the presumption is against suicide, because suicide is contrary to the general conduct of mankind."

It seems that the court charged the jury that the presumption of law was against suicide, but refused to give the reasons for such presumption, precisely as requested by the plaintiff. In this we think there was no error. As the court charged the jury that the presumption of law was against suicide, it was sufficient. The trial judge was not bound to give all, if any, of the reasons upon which the presumption of law is based. The plaintiff in error relies upon Insurance Co. v. McConkey, supra, but that case does not support the contention. While, in the opinion of the court, the charge approved in Mallory v. Insurance Co., 47 N. Y. 54, was recited and approved, in the case then actually under consideration the court approved the following, which was this charge, to wit:

"It is manifest that self-destruction cannot be presumed. So strong is the instinctive love of life in the human breast, and so uniform the efforts of men to preserve their existence, that suicide cannot be presumed. The plaintiff is therefore entitled to recover unless the defendant has, by competent evidence, overcome this presumption, and satisfied the jury, by a preponderance of evidence, that the injuries which caused the death of the insured were intentional on his part."

A close examination of the bill of exceptions will show that the plaintiff in error, otherwise than by excepting to the refusal of requested charges, did not except to any of the charges actually given by the court, except the following, to wit:

"I wish to call your minds back to this fact, after weighing the evidence offered by the defendant on the issue of suicide vel non, if you find that the defendant has established its defense by a preponderance of evidence, preponderating in favor of the side of the defendant, you will find for the defendant, bearing in mind the other modifications I have given you in the charges."

The objection to this charge, as given in the argument and brief, is that thereby the judge unduly impressed upon the minds of the jury that it was only necessary for the defendant to establish suicide by a preponderance of evidence, and so much so that it is difficult to avoid believing that the jury clearly saw that to the mind of the judge suicide had been established by the preponderance of evidence, and that, therefore, the verdict should be for the defendant. As, in our opinion, the trial judge was correct in charging the jury that the defendant was only called upon to establish the suicide of the assured with reasonable certainty by a preponderance of evidence; and as the uncontradicted evidence in the case clearly pointed to suicide as the cause of Ernest Sharland's death,—which cause was, however, left to the jury to find,—we are unable to hold that the language of the trial judge in his presumably closing charge to the jury was reversible error.

Counsel for defendant in error contend with much force that, under the evidence adduced on the trial, the judge should have directed a verdict in favor of the defendant, and it is therefore immaterial whether any errors were committed in the charge to the jury. The evidence found in the transcript apparently excludes with reasonable certainty any other hypothesis than that of suicide, but we find no certificate or admission that all of the evidence offered in the case is included in the bills of exception. The judgment of the circuit court is affirmed.