PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY
*v.* BUTLER.

4-7135                                    174 S. W. 2d 559

Opinion delivered October 25, 1943.

*John M. Shackleford,* for appellant.

*Claude E. Love,* for appellee.

ROBINS, J. Appellant, Provident Life & Accident Insurance Company, on October 1, 1940, issued its certificate, by which, under the terms of a group insurance policy, it insured the life of Brodie R. Butler in the sum of $500, with appellee, Jackson Butler, father of the insured, as beneficiary, the policy containing a stipulation that in event of suicide of the insured within one year from the date of the certificate the insurance thereunder should be null and void. Brodie R. Butler died on May 21, 1941, while this certificate was in force. Suit was thereafter instituted by appellee in the lower court for the amount of the policy, interest, attorney's fee, penalty

and costs. While the answer of appellant did not allege self-destruction by insured as a defense, this was the only defense asserted in the trial. From judgment of the lower court on the jury's verdict in favor of appellee, appellant has prosecuted this appeal.

Appellant urges in this court two grounds for reversal: (1) that the lower court erred in refusing to direct a verdict in favor of appellant; (2) that the lower court erred in permitting the introduction at the trial, by appellee, of a shirt alleged to have been worn by the deceased at the time of his death.

1.

The insured was an unmarried negro, twenty-one years old, employed by a large mill company at Crossett, Arkansas. On May 21, 1941, at about noon, he became involved in a difficulty with a woman of his race in the outskirts of the town of Hamburg, Arkansas. The trouble between Butler and this woman was first observed when they were seen struggling in a lane. This lane ran east and west and entered a street at right angles directly in front of and across the street from the home of a negro named Green Smith. In the struggle Brodie Butler shot the woman in the hand. She succeeded in getting away from him and ran into Green Smith's home. Green Smith testified that Butler followed the woman nearly to his house and demanded that he (Smith) not give her sanctuary; and that, when Smith allowed the woman to go into his house and ordered Butler away from his premises, Butler said "I will shoot myself," and turned, went back into the lane, shot himself, walked about seventy-five steps and fell. Smith testified positively that he saw no person, other than Butler, in or near the lane at the time Butler shot himself.

Mrs. Mack Hayden, a white lady living on a lot adjoining that on which Green Smith's dwelling was situated, who testified as a witness for appellant, stated that the woman screaming and the two shots attracted her attention while she was out on her porch, and that she looked and saw the woman running and the man pur-

suing her; that after Smith refused to let Butler enter his house Butler went up the lane and shot himself; that she did not hear Butler tell Green Smith that he was going to kill himself; that "He stopped right there by this darkey's garden and I couldn't see all of him. I was still looking and there was some shrubbery in the yard and I couldn't see anything but his elbow when it come up and then the gun fired." She further testified that Sylvester Johnson, another negro, was out in his garden, which abutted on the lane, and was standing about ten feet from Butler at the time the shot was fired; that she feared that Butler was killing Johnson and said to her daughter, who was insisting on her mother coming in the house, "No, I believe he is killing Sylvester, and I am going to get Mr. Gardner to call the law. . . ."; that she then had Mr. Gardner call a deputy sheriff, who came and found Brodie's body in the lane. On cross-examination Mrs. Hayden testified: "Q. Then you don't know whether he shot himself or not? A. No. Q. You don't know whether Sylvester Johnson shot him or whether he shot himself? A. No, sir."

Sylvester Johnson, who was introduced as a witness by appellant, testified that he did not arrive on the scene until after all the shooting had taken place.

The undertaker who prepared Butler's body for burial testified that the shot which killed him entered Butler's body just under the left nipple and traveled in a slanting direction, emerging under the right shoulder blade.

There was no testimony as to the calibre of the fatal bullet or as to the size or kind of the pistol, which was found in Butler's right hand by the officer when he arrived on the scene, nor was there any testimony as to the number of shots that had been fired from this pistol.

The rule, as to the burden of proof in a case where suicide is asserted as a defense, is thus stated in 29 American Jurisprudence, p. 1085: "If the circumstances under which the insured came to his death are such that it may have resulted from suicide, and the insurer alleges that fact as a defense, the burden is on it

to establish that fact, for the law presumes that the insured did not intentionally take his own life."

Mr. Justice MEHAFFY, speaking for the court, in the case of *Metropolitan Life Insurance Company and The National Life & Accident Insurance Company* v. *Graves*, 201 Ark. 189, 143 S. W. 2d 1102, said:

" 'Another apt statement of the rule is that where the cause of death is unexplained or undisclosed by evidence, or where evidence tending to prove self-destruction is contradicted, or impeached, or some evidence adduced is consistent with a reasonable hypothesis that the death was not self-caused, the presumption against suicide prevails. And if there be a doubt, the evidence being conflicting and nearly evenly balanced, whether the death was caused by suicide or accident, the presumption is in favor of accident. So, where the evidence points equally or indifferently to accident or suicide, the theory of accident is adopted. And the force of the presumption based upon the love of life must, it is decided, be given effect against the defense of suicide, unless the evidence discloses no other reasonable hypothesis. So, where the evidence in an action on an accident policy shows that the insured suffered an injury which has caused death, and there is no proof in the record from which it can be determined whether the injury was accidental or self-inflicted, the presumption is that the injury was accidental, and not self-inflicted.' 8 Couch on Insurance, 7242.

"It is also stated in the same volume on pages 7245 and 7246: 'These presumptions arise from the natural love of life, the fact that voluntary self-destruction is contrary to the common conduct of mankind, and the criminal aspects of self-destruction. As has been well said, the presumption rests primarily upon common knowledge of the impulses and normal conduct of men, namely, the inherent natural desire to live, and the fact that voluntarily to take one's own life is to run counter to every natural sane impulse.'

"This question has been before this court many times, and it has uniformly held that there is a presumption against suicide. This court said in the case of *Grand*

*Lodge, A. O. U. W.,* v. *Banister,* 80 Ark. 190, 96 S. W. 742: 'In the first place, there is a presumption against suicide or death by any other unlawful act, and this presumption arises even where it is shown by proof that death was self-inflicted—it is presumed to have been accidental until the contrary is made to appear. This rule is founded upon the natural human instinct or inclination of self-preservation, which renders self-destruction an improbability with a rational being.' To support this statement, the following cases were cited: 19 Am. & Eng. Enc. Law, p. 77; *Travelers' Ins. Co.* v. *McConkey,* 127 U. S. 661, 8 S. Ct. 1360, 32 L. Ed. 308; *Conn. Mut. Ins. Co.* v. *McWhirter,* 73 Fed. 444; *Stephenson* v. *Bankers' Life Ass'n,* 108 Ia. 637, 79 N. W. 459; *Leman* v. *Manhattan Life Ins. Co.,* 46 La. Ann. 1189, 15 So. 388, 24 L. R. A. 589, 49 Am. St. Rep. 348; *Home Benefit Ass'n* v. *Sargent,* 142 U. S. 691, 12 S. Ct. 332, 35 L. Ed. 1160; *Walcott* v. *Metropolitan Ins. Co.,* 64 Vt. 221, 24 Atl. 992, 33 Am. St. Rep. 923; *Mutual Life Ins. Co.* v. *Wiswell,* 56 Kan. 765, 44 Pac. 996, 35 L. R. A. 258; *Supreme Council* v. *Brashears,* 89 Md. 624, 43 Atl. 866, 73 Am. St. Rep. 244.''

In the case of *The Home Benefit Association* v. *Sargent,* 142 U. S. 691, 12 S. Ct. 332, 35 L. Ed. 1160, which was a suit to recover upon a life insurance policy, a defense on the ground that insured committed suicide was asserted, and it was shown by the testimony that the insured was found dead in bed with a pistol near his right hand with three of its chambers discharged and a wound in the right temple of the deceased which caused his death. It was proved that the deceased had been suffering from chronic headache which had caused melancholia and that the deceased's wife was seriously ill in a distant city. There was no evidence of any struggle having taken place and there was found on a desk in the room a letter written by deceased to his physician, in which deceased said that he had been suffering terribly with a headache for several days and that it had become wellnigh unbearable. Upon a trial of the case before a jury a verdict in favor of the beneficiary was rendered. The supreme court of the United States, in reviewing this case, held that it was

properly submitted to a jury and affirmed the judgment of the lower court based on the jury's verdict.

In the case at bar there is an irreconcilable conflict in the testimony of witnesses for appellant as to certain important phases of the case. Green Smith, by whom appellant sought to establish that Butler killed himself, testified that he saw no one else near Butler at the time the fatal shot was fired, but Mrs. Hayden, the white lady, also a witness for appellant, testified positively that Sylvester Johnson was about ten feet from the deceased at the time, and that her fear that the deceased was going to kill Johnson caused her to insist on having an officer of the law called. Green Smith also testified that Butler, shortly before the fatal shot was fired, announced his intention of shooting himself, but Mrs. Hayden, who apparently heard the conversation between Green Smith and Butler, did not hear the deceased make this statement. The fact that the bullet entered Butler's body under his left nipple and traveled obliquely through his body to emerge under his right shoulder blade might be taken to indicate that, since the pistol was held in the right hand of Butler, he could not have inflicted this wound upon himself without assuming an incredibly awkward position.

No cause whatever for Butler killing himself was shown, unless frustration of his design to injure further the woman he had shot, or fear of punishment for the offense he had already committed, could be said to supply the motive. Neither such frustration nor such fear would ordinarily furnish an explanation for the suicide of a young negro man.

We are unable to say, in view of the strong legal presumption against suicide, and in the light of the facts shown by the testimony, that the lower court erred in submitting this case to a jury, or in refusing to set aside the jury's verdict.

2.

It is urged that error was committed by the lower court in permitting the jury to examine the shirt introduced in evidence by appellee, it being contended by

appellant that the evidence of appellee alone was not sufficient to identify the shirt as having been the one which his son was wearing when he came to his death. Appellee did not testify that his son was wearing the shirt in question at the time of his death, but stated he had one like it and that the shirt was in the package of clothing which was delivered to him by the funeral home after his son's death; and he admitted that the shirt, since it was worn, had been washed and repaired. One of the employees of the funeral home testified that she did deliver to appellee sometime after the funeral a package which presumably contained the clothing of the deceased. The question as to whether or not this shirt was really the one which Brodie Butler was wearing when he was killed was one of fact for the jury, and it must be assumed that the jury accorded to this evidence only such weight as it was entitled to receive. The court did not err in permitting this shirt to be exhibited to the jury.

No error appearing, the judgment of the lower court is affirmed.