BACHMEYER, Respondent, vs. THE MUTUAL RESERVE FUND LIFE ASSOCIATION, Appellant.

*April 15 — May 3, 1892.*

*Life insurance: Suicide while insane: Proofs of death: Estoppel: Evidence: Court and jury.*

1. A life insurance policy provided that if the assured died by his own hand the insurer should be liable only for the premiums paid by him, with interest, but might, at the option of the directors, pay such further sum as might seem equitable. The assured having died, the insurer, pursuant to a by-law, immediately advanced $100 to his widow, the beneficiary. Afterwards she forwarded proofs of the death, including her sworn statement that the assured committed suicide while insane. The insurer asked for further proof, which was supplied by the beneficiary with some trouble and expense, that the signer of said statement, whose first name appeared as "Marie," was identical with the beneficiary, whose name appeared on the insurer's books as "Maria." *Held* that, in view of the advance already made and of the above provision of the policy, the insurer was not estopped, by having required such further proof, to deny its liability on the policy.

2. The sworn statement by the widow in the proofs of death that the assured committed suicide while insane did not estop her to show that she made such statement on the faith of what others told her, and that in fact the poison which caused his death was not taken by him intentionally but by mistake.

3. The insurer, a mutual association, claimed that under its by-laws the amount of the policy, if payable, should be assessed on the members existing at the time of the death of the assured; that more than a thousand persons then members had ceased to be such, and several thousand other persons had become members, so that such

assessment was impossible; and that the widow was therefore estopped by her statement. It appeared that no specific assessment for each loss was made, but that there were regular bi-monthly assessments, a part of which went to a reserve fund, and that from the income of such fund all suspended claims could be paid without injustice to any member or violation of any rule of the association. *Held*, that there was no estoppel.

4. The sworn statement of the widow that the assured was insane at the time of his death was admissible and tended, as against her, to prove such insanity, even in the absence of other evidence that such was the fact.

5. Besides such statement, there was evidence that the assured, after living in reasonable harmony with his wife for many years, compelled her to apply for a divorce and make preparations for a home elsewhere, in order that he might marry their adopted daughter, but fifteen years old; that it became necessary to send the girl away; and that about the time he must have taken the poison he bewailed his fate on being told that she was never to return. If he was insane when he took the poison, there was no evidence which would support a finding that he took it unintentionally; and by the *lex loci contractus* the policy was void if he committed suicide, whether sane or insane. *Held*, that it was error to take from the jury the question whether or not he was insane at the time he took the poison.

APPEAL from the Circuit Court for *Milwaukee* County.

This action is upon a contract entered into by the defendant life association with one Ludwig Bachmeyer, in and by which, on certain conditions therein specified, the association insured the life of Bachmeyer in the sum of $2,000, for the use and benefit of the plaintiff, who was his wife.

The contract or policy of insurance contains the following stipulation: " Death of the member by his own hand, whether voluntary or involuntary, sane or insane at the time, is not a risk assumed by the association in this contract; but in every such case there shall be payable, subject to all the conditions of this contract, only a sum equal to the amount of the premiums paid by said member, with six per cent. interest per annum. But the board of direct-

ors or the executive committee of the association, at their
option, may in such case order such further payment as
may to them seem just and equitable, not exceeding in the
aggregate the maximum amount of this contract."

The insured died July 19, 1889, having paid all assess-
ments theretofore made upon him by the association pur-
suant to the policy, amounting to $52.24. Pursuant to a
by-law of the association, it advanced to the plaintiff $100
after the death of her husband, immediately after learn-
ing that such advance was desired by her, but under an ex-
press stipulation that such payment should not be construed
as an acknowledgment of the validity of the policy.

In due time after the death of the insured, plaintiff's at-
torney forwarded to the association proofs of his death,
which consisted of a letter of advice signed by the attor-
ney; sworn answers of plaintiff to certain questions pro-
pounded to her by the association; sworn answers of the
attending physician of the deceased to certain other ques-
tions propounded to him in like manner; and the coroner's
certificate of death, to which is attached the proceedings
and testimony on the inquest. In each of these documents
it is stated that deceased committed suicide, or died by his
own hand, by taking morphine or opium poison while he
was temporarily insane. The attorneys or agents of the as-
sociation acknowledged the receipt of such proofs by let-
ter addressed to plaintiff's attorney, and therein called his
attention to the fact that the books of the association
showed the name of the beneficiary in the policy to be
"Maria," while the sworn statement of death is signed
"Marie" Bachmeyer. At some expense and loss of time,
plaintiff made and forwarded to the association an addi-
tional affidavit of her identity as the beneficiary named in
the policy.

After this action was commenced, and before the trial
thereof, the plaintiff made and forwarded to the defend-

ant another affidavit, in which she expresses the opinion that her former statement was erroneous; that she had no personal knowledge of the facts therein stated, but relied upon the opinion of the physician, and that she thinks that her deceased husband took the drug which caused his death by mistake, in the belief that it was quinine or some other innocent drug; and that he was of sound mind when he took it.

The defendant put in evidence plaintiff's first sworn statement of the cause of her husband's death, and the letter of her attorney transmitting the same. On the trial the court submitted it to the jury to find whether the plaintiff had satisfactorily explained the reasons why she stated in her proofs of the death of her husband that he committed suicide and was insane at the time, and instructed them that if she so stated unadvisedly and without intent to defraud they were at liberty to disregard such proofs and determine the question of suicide on the merits. The court took from the jury the question of the insanity of the insured at the time of his death, on the alleged ground that there was no sufficient evidence tending to prove that he was insane at that time. Further statement of the case will be found in the opinion.

The jury found for the plaintiff. A motion on behalf of the defendant for a new trial was denied, and judgment for plaintiff entered for the amount of the insurance (less $100 theretofore advanced thereon), and for interest and costs. The defendant appeals from the judgment.

For the appellant there was a brief by *Elliott & Hickox*, and oral argument by *C. T. Hickox*. They contended, *inter alia*, that under the facts shown the plaintiff is concluded by the proofs furnished and is estopped from claiming that the death of the assured was other than by his own hand. It was the duty of the plaintiff to know and to show by her proofs whether it was a death by his own hand or

otherwise, and the defendant was justified in relying upon her statement. Accepting such statement as true, the association audited the claim for the amount shown by the proofs to be due, that is, the amount of the premiums paid with interest only; and no assessment was made for anything beyond that amount. Since that time more than a thousand members have been lost to the association who should have contributed to this death-claim on the basis of either a natural or an accidental death, and from whom contributions cannot now be enforced; and the remaining members cannot be compelled to pay an assessment increased in amount by reason of its being apportioned among a number thus decreased by no fault of theirs or of defendant. See *Continental Nat. Bank v. Nat. Bank,* 50 N. Y. 575; *Buckwheat v. St. Croix L. Co.* 75 Wis. 194; *Perry v. Williams,* 39 id. 339; *Rice v. Kahn,* 70 id. 323; *Meister v. Birney,* 24 Mich. 436; *Trustees Presb. Cong. v. Williams,* 9 Wend. 147; *De Grove v. Metropolitan Ins. Co.* 61 N. Y. 594; *Irving v. Excelsior F. Ins. Co.* 1 Bosw. 507; *Campbell v. Charter Oak F. & M. Ins. Co.* 10 Allen, 213; *Insurance Co. v. Newton,* 22 Wall. 32; *Coleman v. Pearce,* 26 Minn. 123; *Stevens v. Ludlum,* 46 Minn. 160; *Ross v. Hobson,* 26 N. E. Rep. (Ind.), 775.

For the respondent there was a brief by *Julius E. Roehr* and *Joshua Stark,* and oral argument by *Mr. Stark.*

Lyon, C. J. I. It is maintained on behalf of plaintiff that the judgment should be affirmed, and on behalf of defendant that it should be reversed, on the ground of estoppel. These conflicting claims will first be considered and disposed of.

1. It is argued for plaintiff that by calling for further proofs of the identity of "Maria" with "Marie" Bachmeyer, and putting the plaintiff to trouble and expense to supply such proofs after the defendant was informed that

the insured died by his own hand while insane, and hence after it knew the facts which released it from liability on the policy, except for the assessments paid thereon, which it had already more than refunded, the defendant is estopped to deny its liability on the policy for the whole amount of the insurance. This is an attempted application to this case of the rule laid down in Bigelow, Estoppel, 578, and adopted in *Webster v. Phœnix Ins. Co.* 36 Wis. 67, and in many other cases in this court and elsewhere, to the effect that " a party cannot occupy inconsistent positions; and, where one has an election between inconsistent causes of action, he will be confined to that which he first adopts. Any decisive act of the party, done with knowledge of his rights and of the facts, determines his election and works an estoppel." The rule is not applicable here for two reasons: (1) The defendant was entitled to know whether it had made the advance payment on the policy to the proper beneficiary or to a stranger; (2) the by-laws of defendant authorized its board of directors or executive committee to make further payments on the policy, even to the full amount of the insurance, in their discretion, although the defendant was legally liable only for assessments paid upon the policy and interest. The defendant was entitled to be informed of the identity of the beneficiary in the policy with reference to making such further advances, should its authorized officers elect to do so. The defendant might properly require the identification of the beneficiary for either of the above purposes, without becoming thereby estopped to assert that it is not liable on the policy for the whole amount of insurance written therein.

2. The defendant maintains that the plaintiff is estopped to claim the insurance because, in her proofs of the death of her husband, she deposed that he committed suicide while insane, by which sworn statement it is claimed she is bound. This court has held in several cases that an honest

or unintentional mistake in the proofs of loss under a fire policy will not necessarily prevent a recovery thereon, even though notice of the error is not given the insurers until the trial. *Parker v. Amazon Ins. Co.* 34 Wis. 363; *Waldeck v. Springfield F. & M. Ins. Co.* 53 Wis. 129. In the latter case the rule is fully discussed in the opinion by Chief Justice COLE, and many cases here and elsewhere are cited to support it. Obviously the same rule applies to a mistake in proofs of death under a life policy. The plaintiff testified on the trial that she deposed to such statements in the proofs of death on the faith of what others had told her, and not from actual knowledge.

3. The defendant further claims that plaintiff is estopped to maintain this action on another ground. It is said that this is a mutual association, and that under its rules and by-laws the amount of this policy, if defendant is held liable to pay it, should be assessed upon the members existing at the time of Bachmeyer's death, and them only, and that more than 1,000 persons who were then members have, by death or otherwise, ceased to be such, and several thousand other persons have since become members, and hence that such an assessment is impossible. In view of the fact that the membership of the defendant is constantly changing, if the above proposition is sustained it would defeat the payment of all claims against the defendant upon policies the allowance of which has, by reason of litigation or any other cause, been suspended for any considerable time. We think the proposition is not a valid one. The by-laws require the executive committee to make an assessment once in two months, of such amount as it may deem sufficient to meet the current mortality of the association, upon the entire membership at the date of the last death of the audited claims prior thereto. No specific assessment is made to cover each case, but the assessments are based upon estimates of the amount which defendant will be required to

pay. The proceeds of these assessments are divided into two funds,— a "death fund" and a "reserve fund." Seventy-five per cent. of the proceeds of such assessments go to the former, and twenty-five per cent. to the latter, fund. The reserve fund is required to be invested in interest bearing securities. The death fund and the *income* of the reserve fund are appropriated to the payment of current claims. This leaves the reserve fund intact and constantly increasing. Out of the income of this fund all suspended claims may be paid, without doing any injustice to members of the association, or violating any of its rules or any principle of equity between the members. For example, an assessment is made in April of a given year to pay off existing claims by death made during the preceding February and March. It may be that fifty members died during these two months,— half in February and half in March,— and that on the last audited claim the death occurred, say March 25th. Although large numbers of persons may have become members after most of these deaths occurred, but before March 25th, yet all these must be assessed to pay off the policies issued to all such deceased members, and none of the latter will be assessed to pay any of such claims. It will thus be seen that the rule of assessment contended for is not found in the by-laws. Indeed, such a rule is impracticable, unless the rule of making a specific assessment for each loss be adopted. The rule of assessment of the defendant is the better rule, for it simplifies the procedure. Besides, it operates upon the members with reasonable equality; for, if a new policy be assessed to pay losses accruing before the inception thereof, the probability is that it will escape assessments made after its termination to pay losses accruing in like manner before its termination.

We conclude, therefore, that the plaintiff is not estopped to show that her proofs of death contain honest mistakes

of fact, nor defendant to show that it is not liable on the contract or policy in suit.

II. The learned circuit judge took from the jury the question whether or not the insured was insane at the time he took the drug which terminated his life. We think this was error. The sworn statement of plaintiff that her husband was then insane was put in evidence by defendant; and, as against the plaintiff, it tends to prove such insanity, even though there were no other testimony tending in the same direction. It might not have that effect as against any other person who might be interested in the question, but no person other than the plaintiff has such interest. The case of *Hiles v. Hanover F. Ins. Co.* 65 Wis. 585, cited to the opposite doctrine, is not in point. It was there held that proofs of loss are not competent evidence in favor of the claimant of the facts stated therein, but only of compliance with the requirements of the policy. The same is true of proofs of death in case of a life policy. Here the insurer, and not the claimant under the policy, offers the proof as evidence against the claimant of facts therein admitted by the latter. Insanity is a fact which may be proved, like any other fact, by the admissions of the adverse party of the existence thereof. We think, however, there is other testimony tending to prove the insanity of Bachmeyer at the time he took the fatal drug. The testimony shows that after living in reasonable harmony with his wife for twenty-three years, and after he was more than fifty years of age, the insured conceived the purpose of being divorced from his wife and marrying their adopted daughter, then but fifteen years old. If consulted in respect to the proposed project, the girl never consented thereto, and the plaintiff found it necessary to send her away from their home. Yet he compelled his wife to apply for a divorce from him, and to open negotiations for a home with her son by a former marriage. When informed on the day

of his death, just about the time he must have taken the poison, that his wife had not heard from her son, and that the girl was never to return home, he bewailed his fate, saying: "Oh, my God! I am an unfortunate man." It would be a mercy to his memory could the evidence be held conclusive of his insanity. It would be against plain common sense to hold that it does not tend to prove his insanity, especially as against the plaintiff, who has sworn positively to its existence.

But it is argued that the error is immaterial. We do not so regard it. The defendant is a New York corporation, and the contract of insurance is, by its terms, a New York contract, to be interpreted by the laws of that state. The contract is that if the insured came to his death by his own hand, voluntarily or involuntarily, whether he was sane or insane at the time, the defendant is not liable on the contract. The law of New York in respect to such a contract is laid down in *De Gogorza v. Knickerbocker L. Ins. Co.* 65 N. Y. 232, substantially as follows: "If the insured commits suicide, although at the time utterly bereft of reason, it is a death by his own hand or act, within the meaning of the condition, and the policy is forfeited." The case also holds that a suicide resulting from insanity is in no correct sense a death by accident. All the cases seem to agree that if one commits suicide by taking poison it is a death by his own hand. We do not understand that the law of New York differs from our law on the same subject as laid down by Chief Justice Dixon in *Pierce v. Travelers' L. Ins. Co.* 34 Wis. 389. Indeed, the New York court quotes extensively from the opinion and professes to adopt the doctrine of that case.

The significance of the above observation is that if Bachmeyer was insane when he took the drug which terminated his life, there is no testimony which will support a finding that he took it by accident or unintentionally, and in such

case the verdict would necessarily be for the defendant. On the other hand, if the insured was then sane, it may be there is enough in the testimony to send to the jury the question whether he took the drug by mistake or unintentionally. We assume, without deciding, that in the event of his sanity the testimony was sufficient to send the question of accident or mistake to the jury. For the above reasons it must be held that the error in taking the question of the insanity of the insured from the jury is material, and hence necessarily fatal to the judgment.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded for a new trial.