DISCHNER *et al* v. PIQUA MUT. AID & ACCIDENT ASS'N. OF PIQUA, OHIO.

1.  In an action on a life insurance policy where defendant claimed that assured suicided, and the attending physician, in the proofs of death, gave suicide as the cause of death, but the evidence merely showed that from three to five minutes after deceased was seen on the street he was found dead in his place of business, with a bullet in his brain, and a revolver with one empty chamber lying in a pool of blood under one of his limbs, the facts were not so necessarily indicative of suicide as to justify the court in refusing to submit the case to the jury.

2.  Where a benefit certificate provided that the beneficiary should not be entitled to any participation in the benefit fund if insured suicided, and further provided for payment from the benefit fund in the usual course of adjustment, the contention that the suicide clause referred only to payment from the benefit fund, and that the beneficiary was entitled to payment out of some other fund, even though insured suicided, was without merit.

(Opinion filed May 4, 1901.)

Appeal from circuit court, Minnehaha county, HON. JOSEPH W. JONES, Judge.

Action by Joseph Dischner and others against the Piqua Mutual Aid & Accident Association of Piqua, Ohio. From a judgment in favor of defendant, plaintiff's appeal. Reversed.

*R. W. Parliman* and *J. W. Boyce,* for appellants.

*Hosmer H. Keith,* for respondent.

FULLER, P. J. In the sworn proofs of death which the plaintiffs allege they furnished conformably to a certificate of membership, or life insurance policy issued to John Dischner by the defendant, and made the basis of this suit, suicide is specified by the attending physician as the immediate cause of the death of the insured, and

it is claimed that the testimony offered at the trial tends to corroborate such statement.   At the conclusion of all the evidence the trial court took the case from the jury by the direction of a verdict in favor of defendant, and plaintiffs appeal from a judgment accordingly entered.   It is stipulated in the contract "that the beneficiary named in this certificate shall not be entitled to any participation in the benefit fund of this association if the death of the insured is caused by suicide, whether the insured be sane or insane."   Should a member die, it is further provided that direct and affirmative proofs of death must be made and forwarded to the association, at its home office, within a fixed period; and, pursuant to one of its rules blank statements, to be filled out and sworn to, respectively, by the claimants, attending physician, officiating clergyman, and the undertaker, were accordingly furnished appellants by respondent on receipt of notice that the death of John Dischner had ensued.   In response to one of the printed questions there propounded, the attending physician swore that suicide was the immediate cause of death, and that the same was caused instantly by a bullet wound in the head.   In the affidavit subscribed to by each of the appellants, and which constitutes a part of the required proofs, no statement is made concerning the cause of death; and counsel for the beneficiaries maintain that the sworn statement of the attending physician is insufficient to justify a refusal to pay the amount, to collect which this action was instituted.   According to their complaint, these affidavits were prepared and forwarded by appellants to meet the requirements of the contract of insurance, and being accepted by the association, and considered sufficient to show that the death of the insured resulted instantly from a self-inflicted bullet wound, payment was refused for the sole reason that such proofs of death established the fact of suicide.   While the preponderance of modern authority strongly

favors the view that proofs of death furnished pursuant to a life insurance policy, or in compliance with a certificate of membership are *prima facie* evidence of all the facts therein stated, it is equally well settled that beneficiaries may show by amended proofs or parol testimony offered at the trial that such proofs are erroneous or unauthorized. Insurance Co. v. Newton, 22 Wall. 32, 22 L. Ed. 793; Bachmeyer v. Association, 82 Wis. 255, 52 N. W. 101; Campbell v. Insurance Co., 10 Allen, 213; Keels v. Association, (C. C. ) 29 Fed. 198; Insurance Co. v. Melick, 12 C. C. A. 544, 65 Fed. 178, 27 L. R. A. 629; Association v. Sturtevant, 78 Hun. 572, 29 N. Y. Supp. 529; Sharland v. Insurance Co.., 41 C. C. A. 307, 101 Fed. 206.

Concerning the particulars of the fatality the testimony shows that from three to five minutes after the insured was seen walking upon the street, seemingly in perfect health, he was discovered dead in his place of business with a bullet in his brain; and a revolver, from which one cartridge had been discharged, was found lying in a pool of blood directly under one of his limbs. The building in which the tragedy occurred was occupied by the insured as a restaurant, and upon the locked outer door a card, apparently in his own handwriting, had been placed, reciting, in substance, that he was confined to a different apartment by reason of illness; and no evidence was offered tending to explain the circumstances thus disclosed. If, as a matter of fact, all the evidence relating to the cause of death tended to corroborate the statement of the attending physician, and no inference other than that of self-destruction was permissible, the case was rightfully taken from the jury, because respondent, by the terms of its contract with the insured, was thereby released from all liability. Hanna v. Insurance Co., (N. Y. App.) 44 N. E. 1099; Insurance Co. v. Higginbotham, 95 U. S. 380, 24 L.

Ed. 499;Parish v. Insurance Co., (Tex. Civ. App.) 49 S. W. 153. However, it involves no extravagance of expression to say that it is the duty of the court to submit a case to the jury on undisputed facts when they are such that different impartial minds might reasonably reach a different conclusion concerning their force and effect. Bates v. Railroad Co., 4 S. D. 394, 57 N. W. 72. Dr Locke, who was the only person intimating suicide, in the proofs of death or anywhere, testified in substance at the trial that he was unable to say whether the mortal wound was inflicted by a revolver in the hands of the deceased or by some other person, or whether it was intentional or accidental, and that there was nothing in the appearance of the body or location of the wound that would aid in determining whether the deceased came to his death designedly by his own hand. This testimony, when considered with all the other facts and circircumstances disclosed at the trial, clearly shows that the word "suicide" was used conjecturally in his former *ex parte* statement, constituting a part of the sworn proofs of death; and there is nothing in the record to justify the court in concluding, as a matter of law, that the insured committed suicide. The evidence being wholly circumstantial, and doubtless sufficient to justify a reasonable inference other than that of intentional self-destruction, the question was peculiarly proper for the consideration and determination of a jury. As the amount specified in the contract of insurance and sued for is, according to the certificate of membership, made payable directly from the benefit fund of the association, in the usual course of adjustment, and there is nothing in the pleadings or evidence upon which to base a claim to a portion of the emergency fund, there is no merit in the contention of appellants' counsel that the association is liable in some amount, even though the fact of suicide stands proved. For the failure to submit the case

to the jury, and the error in directing a verdict, the judgment appealed from is reversed, and a new trial ordered.