Columbian Mut. Life Assur. Soc. *v.* Harrington *et al.**

(In Banc. May 18, 1925.)

[104 So. 297. No. 24447.]

1. Pleading. *Recital in exhibit attached to declaration controls averment in declaration.*

   Recital, in covenant of insurance issued by mutual benefit society, attached to declaration in action thereon, that the society was organized under Laws 1916, chapter 206, *held* to control allegation in declaration that the society was a nonresident corporation.

2. Insurance. *Burden of proving defendant a foreign corporation held on plaintiffs.*

   In action on covenant of insurance in which the general issue plea was interposed to declaration alleging that defendant was a foreign corporation, plaintiffs, to avoid breach of warranties and false representations, on the ground that by-laws, constitution, and application were not furnished to the insured with covenant of insurance as required where insured is foreign corporation

under Code 1906, section 2675 (Hemingway's Code, section 5141), had burden of proving the defendant a nonresident corporation.

3. Insurance. *President's uncontradicted testimony held to prove that society was domestic mutual benefit society, and not foreign corporation.*

In action on covenant of insurance, in which plaintiffs sought to avoid breach of warranty and false misrepresentations on ground that assured was not bound by the by-laws, constitution and application because not furnished with copies thereof as required, where insurer is corporation by Code 1906, section 2675 (Hemingway's Code, section 5141), the uncontradicted testimony of defendant's president that it was mutual benefit society, organized under Laws 1916, chapter 206, and not a foreign corporation, *held* sufficient to prove such fact.

4. Insurance. *Statute requiring "life insurance companies" to deliver application with policy held inapplicable to mutual benefit societies.*

Code 1906, section 2675 (Hemingway's Code, section 5141), requiring "life insurance companies" to deliver to the insured with the policy a copy of the application, or be precluded from denying falsity of statements therein, *held* inapplicable to mutual benefit associations, in view of Hemingway's Code, section 5176.

5. Insurance. *Only seven incorporators required for organization of mutual benefit society.*

Under Hemingway's Code, section 5184, only seven incorporators are required for organization of mutual benefit society.

6. Insurance. *Falsity of representations as to health held for jury.*

Falsity of insured's representation that she was not afflicted with cancer or carcinoma of the breast at time of application for insurance and time of delivery of covenant *held* for jury, notwithstanding operation for cancer of breast less than twenty days after delivery of policy.

7. Insurance. *Physician's testimony as nonexpert witness of case of carcinoma of breast personally observed by him held admissible.*

In action involving issue as to whether insured's representations that she was not afflicted with cancer or carcinoma of the breast was false, in view of assured's operation less than twenty days after delivery of policy, testimony of physician as nonexpert witness as to development of a case of carcinoma of breast which he had personally observed within less than twenty days after injury of patient *held* admissible.

8. Insurance. *Testimony by insured's husband as to bruise on breast held admissible in action involving falsity of representations*

*that insured was not afflicted with cancer or carcinoma of breast.*
In action involving issue as to whether insured's representation
that she was not afflicted with cancer or carcinoma of the breast
was false, in view of assured's operation less than twenty days
after delivery of policy, testimony of insured's husband as to
bruise on insured's breast *held* admissible.

9. EVIDENCE. *Proofs of loss held admissible against beneficiaries to
prove misrepresentation by insured as to age.*
Proofs of loss voluntarily submitted to insurer by beneficiaries *held*
admissible against beneficiaries as evidence that insured had mis-
represented her age and had obtained insurance at age not insur-
able under by-laws and constitution made part of the contract
of insurance under Hemingways' Code, section 5180.

10. AFFIDAVITS. *Ex parte affidavits held not admissible to prove mis-
representation of insured's age.*
*Ex parte* affidavits secured by insurer on its own initiative *held*
not admissible to prove insured's misrepresentation of her age.

---

*Headnotes 1. Pleading, 31 Cyc., p. 564; 2. Insurance, 33 C. J., sec-
tion 824; 3. Mutual Benefit Insurance, 29 Cyc., p. 244; 4. Insurance,
32 C. J., section 234; 5. Mutual Benefit Insurance, 29 Cyc., p. 14; 6.
Mutual Benefit Insurance, 29 Cyc., p. 249; On representations as to
health of insured when he has an undiscovered disease, see note in
53 L. R. A. 193, 15 L. R. A. (N. S.) 1277; 14 R. C. L., pp. 1070-1071; 3
R. C. L. Supp., p. 336; 4 R. C. L. Supp., 938. 7. Mutual Benefit Insur-
ance, 29 Cyc., p. 242; 8. Mutual Benefit Insurance, 29 Cyc., p. 242; 9.
Evidence, 22 C. J., section 344; Mutual Benefit Insurance, 29 Cyc., p.
242; Incorrect statement of age, in application for insurance as
affected by provisions of constitution or by-laws fixing age limit; see
notes in 1 A. L. R. 463, 14 A. L. R. 927; 14 R. C. L., p. 1068; 3 R. C. L.
Supp., p. 335, 4 R. C. L. Supp., p. 938; 10. Affidavits, 2 C. J., section 140;
Mutual Benefit Insurance, 29 Cyc., p. 242.

APPEAL from circuit court of Simpson county.
HON. W. L. CRANFORD, Judge.
Action by Maggie Harrington and others against the
Columbian Mutual Life Assurance Society. Judgment
for plaintiffs, and defendant appeals. Reversed and re-
manded.

*Wells, Stevens & Jones* and *J. H. Sumrall,* for appel-
lant.

In discussing the first assignment of error with reference to the exclusion of the trial court of affidavits furnished to the society by the beneficiaries in proof of death of the assured, and in support of their claim against the society, we desire to call the attention of the court to the provisions of the constitution and by-laws of the society which are made a part of the contract by the application and covenant, which provide that they shall become a part of the contract, and as required by sections 290 and 291 of said constitution and by-laws; and in accordance with the provisions of section 8, chapter 206, Laws 1916, under which said society is incorporated and operates. See sections 365 and 367 of said constitution and by-laws.

The record shows that the affidavits, including statements as to the date of birth of the deceased assured were not only furnished by the claimants who were named as beneficiaries in the covenant sued upon, but that at least two of said affidavits were executed by a brother and a sister of the deceased, both of whom in the very nature of things, were in position to know the age and date of birth of their sister; and since this evidence was material, in view of the fact that the society did not issue insurance covenants to any persons above the age of fifty-five years on the ordinary life plan, which carried a cheaper rate than other plans of insurance; and since the deceased member had succeeded in procuring this particular form of insurance by reason of a false warranty as to the date of her birth, which resulted in putting her in a class in which she did not rightfully belong, and enabled her to procure a covenant of insurance on a plan to which she was not entitled, then the importance of this evidence becomes obvious, and the court erred in refusing to permit this evidence to be introduced, and this error amounts to a substantial right being denied to the defendant in said cause, which would justify this court in reversing this cause on that error alone.

It might be argued that these affidavits were not admissible because of the fact that they were mere *ex parte*

affidavits of persons other than those who received direct benefit from the proceeds of the covenant, but all questions that might be presented with reference to the admissibility of this evidence, under ordinary circumstances, and under different conditions, were foreclosed by the decisions of this court in *Eminent Household of Columbian Woodmen* v. *Wicks,* 116 Miss. 211, and *Sovereign Camp, W. O. W.* v. *Garner,* 125 Miss. 8, in which it is held that fraternal benefit societies are not governed by the general laws with reference to insurance; but that chapter 206, Laws 1916, constitutes the sole and only law applicable to the covenants and manner of doing business of such fraternal benefit societies as are authorized to operate thereunder.

This third assignment of error is directed to, and necessarily includes both of the former assignments of error, already discussed, in that the state of the record, and all the testimony introduced by the plaintiffs in rebuttal of the complete and valid defense to the action was improperly allowed to be submitted to the jury under the circumstances surrounding the case.

In *Sovereign Camp, W. O. W.,* v. *Sloan* (1924), 101 So. 195, it was held that it was within the province of the court to take judicial notice of the fact that a certain condition of the human body is a disease and not a temporary ailment; and, therefore, it was not only within the province of the trial court but its absolute duty, in view of the undisputed testimony of experts as to the duration of the malady which caused the death of the assured in this case, for the trial court to have excluded the improper evidence introduced by the plaintiffs in this case, and recognize the fact that under the positive proof, and the character thereof, submitted by the defendant, there had been a false warranty by the assured in the application and medical examination.

It will probably be urged in this case, as it was urged in the trial in the lower court by appellees' counsel, that the testimony of Dr. Shands, the expert who testified in this case, and also the attending physician and surgeon

who performed the operation upon the deceased for the malady which ultimately produced her death, will be inadmissible because privileged; but it is only necessary to direct attention to *W. O. W.* v. *Farmer,* 116 Miss. 626.

In discussing the fifth and last assignment of error, to the effect that the verdict and judgment in the lower court is contrary to the law and evidence, a resume of the entire evidence introduced in this case is necessary, but we shall only dwell upon the important features of the testimony indicating that an incorrect verdict and judgment has been rendered in this case. We are not unmindful of the well-established rule that this court will not disturb the finding of fact by a jury, if it is supported by substantial proof that may be reasonably believed by an ordinary mind, but we also know that it is the policy of this court, where the contradicting testimony is so overwhelming as to manifest an erroneous finding of fact upon reasonable proof, that this court will not hesitate to exercise its right and reverse a case where it is perfectly manifest that an erroneous verdict has been reached under the facts, especially when from all the facts and surrounding circumstances a manifest reason is apparent why such erroneous verdict was rendered.

This court in the case of *Sovereign Camp, W. O. W.,* v. *Sloan,* 101 So. 195, heretofore referred to, has laid down the positive rule with reference to the judicial notice that the courts will take of disease, and has also reaffirmed the rule formerly established in connection with fraternal societies as to false warranties voiding a policy of insurance, which furnished ample authority for the trial court to have excluded the improper evidence allowed to be submitted to the jury in the lower court in the trial of this cause. The lower court having failed to do its duty in connection with this case in my humble judgment it is not only within the province of, but becomes the solemn duty of this court to invoke these well-recognized rules of this tribunal with reference to these matters and reverse this case and render a judgment here for the defendant.

*Longino, Hilton & Hilton,* for appellees.

The defendant under its plea of general issue, and notice thereunder, denied the allegations of the declaration to the effect that it was not and had not, been duly incorporated as a domestic society under the laws of Mississippi, and charged that it was a Mississippi domestic fraternal insurance association, and assumed the burden of proving its allegations in that respect, and introduced in evidence over the objection of plaintiff, a printed pamphlet, which purported to be the charter, constitution and by-laws of the Columbian Life Assurance Society.    The plaintiffs objected to the introduction thereof and afterwards moved to exclude same, which motion was by the court overruled.    The appellees now show to this court that the said pamphlet claimed by the defendant to be its charter, constitution and by-laws as exhibit No. 6 to Binford's testimony, page 116 of the record to 287, both included, should not have been admitted in evidence because it was not properly identified and proven to be such.

Appellees say that before said pamphlet would be competent in any case under the rules of evidence it should show on its face that the alleged articles of incorporation were in accordance with the laws of the state, governing such associations and that the same had been approved by the insurance commissioner and that a charter of incorporation had been granted by the said insurance commissioner, and that the constitution and by-laws under such charter had been submitted to and approved by the insurance commissioner.    The appellees insist that this could only be done either by the original, showing such facts, or copies thereof, from the original on file in the insurance commissioner's office duly authenticated and proven by the certificate of the insurance commissioner and attested by his seal of his office, which was not done, and said pamphlet should not have been therefore admitted in evidence.    See section 2555, Code of 1906.

The burden of proof, we think, is on the appellant to show AFFIRMATIVELY THAT IT HAS COMPLIED WITH ALL THE REQUIREMENTS OF LAW WHICH WOULD ENTITLE IT TO BECOME INCORPORATED, and that it has in fact been legally incorporated, and is now an incorporated fraternal domestic order as provided and required by the Mississippi laws. These precedent requirements needful to its incorporation do not appear from the said pamphlet exhibit No. 6 to Binford's testimony, which was the only proof offered in support of appellant's contention that it is a domestic corporation.

It appears that the said supposed charter shows its own illegality by providing in the very outset of its business that the home office is in another state and further that by transacting all of its executive business at its said office in Memphis, it has directly and positively violated that expressed provisions of the Mississippi law under which it claims its existence and right to do business. Section 2641, Code of 1906.

The defendant now seeks to find justification of its illegal act, above herein set out, by the provision found in an amendment passed by the legislature of 1920, chapter 254, page 367, amending section 2641, Code of 1906, and the said Act of 1916, which requires the principal office and place of business to be in this state, and says that Fraternal Benefit Societies may provide for and maintain a principal office by and with the consent of the insurance commissioner in any state in which such society has subordinate branches.

The defendant must show that the change of the "Home Office" and principal place of business from Mississippi to Tennessee was formally and affirmatively authorized by the members. Such authorization was not shown to have been given as it was the duty of the defendant to have done. See, *N. O. J. & G. N. R. R. Co.* v. *Harris,* 5 Cushman, 517.

Appellees insist further that the 1920 amendment could only be given a prospective effect, or operation, from the date of its passage, and could not be applied

retroactively so as to legalize an already illegal act committed by the association in placing its domicile, contrary to law, outside of the state.

The law provides that it shall be unlawful for any domestic or foreign insurance company or Fraternal order to transact or offer to transact any business not authorized by the provisions of the charter and the terms of their by-laws. Section 2635, Code of 1906. The law further provides that all Fraternal orders who do business in this state must be incorporated. Section 2738, Code of 1906.

From the facts in this case the conclusion seems irresistible that the appellant is neither a domestic nor a foreign corporation, and that its only legal *status* is that of a partnership composed of its executive officers doing business in the name of Columbian Mutual Life Assurance Society, domiciled in the state of Tennessee. Or in legal designation it is a voluntary (or unincorporated) association of persons, and as such is liable to its policyholders under its contract, same as other insurance companies, doing a like insurance business in the state. And in controversies over death losses it is bound by the same general insurance laws like other life insurance companies, doing insurance in the state.

It cannot therefore lay claim to an exemption from compliance with section 2676, Code of 1906, relative to mis-statement of age of applicants. Nor to the requirement of section 2675 of said Code, requiring life insurance companies doing business in the state of Mississippi to deliver to the insured, in any form, a copy of the insured application and that in default thereof the company shall not be permitted in any court of this state to deny that any of the statements in said application are not true.

The proof shows, and the fact is not contradicted by the appellant, that a copy of the application in question was not delivered to the insured with Mrs. Harrington's said policy. This requirement was a rule of substantive law, it became a part of the contract and could not be

waived. *Sovereign Camp, W. O. W.* v. *Farmer,* 77 So. 655.

The appellant contends that the charter, constitution, and by-laws which it claims is embodied in the pamphlet in question became, and was part of the contract with Mrs. Harrington. This the appellees say was not true under the facts in this case, because the proof as affirmatively shown by witness Mangum, the same was not delivered to her or explained to her or that she ever saw same or knew of its contents.

But aside from all failures of the appellant company to comply with the law in the organization and conduct of its pretended business as a domestic insurance association, appellees insist that the verdict of the jury in its findings for appellees was right under the proven facts in the case.

With reference to another contention of appellant here that there was a misrepresentation as to the age of the applicant for the insurance, we gather from the brief and the record that the contention is that because some affidavits in making the proof of death, setting forth the age of the deceased, her age was given as a year older than the application stated. These proofs were signed by some relatives who were present in the court and could have testified and been cross-examined. They were made for the purpose of presenting the claim and not to be received without the cross-examination as evidence on a trial of the cause.

*Wells, Stevens & Jones* and *J. H. Sumrall,* in reply, for appellant.

The declaration undertakes to convert a domestic fraternal benefit society, chartered and protected by the laws of Mississippi into a "foreign insurance company," and this, notwithstanding the common knowledge that the Columbian Mutual Life Assurance Society, formerly the Columbian Woodmen, has its charter and legal domicile in this state, and by a special act of the legislature,

is authorized to maintain executive offices in any state where it has subordinate branches. It is a fraternal benefit society complying in good faith with all of the requirements of the law and entitled to the protection of chapter 206, Laws of 1916, which specially defines and regulates this character of society.

We need not remind this court of the fundamental distinction between a fraternal society and a regular life insurance company. The decisions of our court in numerous cases have been in line with the declarations of leading courts of the union. *Reynolds* v. *Royal Arcanum,* 78 N. E. 129, 7 L. R. A. (N. S.) 1154; *Royal Arcanum* v. *Behrend,* 247 U. S. 394, 62 L. Ed. 1182, 1 A. L. R. 966; *Supreme Council* v. *Green,* 237 U. S. 531, 59 L. Ed. 1089, L. R. A. 1916A, 771; *K. of P.* v. *Mims,* 241 U. S. ——, 60 L. Ed. 1179; *Robinson* v. *Templar Lodge,* 117 Cal. 375, 49 Pac. 170; *W. O. W.* v. *Woodruff,* 80 Miss. 546, 32 So. 4; *Newman* v. *Supreme Lodge K. of P.,* —— Miss. ——, 70 So. 241, L. R. A. 1916C, 1051; *Butler* v. *Eminent Household of Columbian Woodmen,* 116 Miss. 85, Ann. Cas. 1918 D, 1137; *W. O. W.* v. *Farmer,* 116 Miss. 626.

We need not look to the decisions themselves for the applicable principles of law in this case, for the very statute itself measures the rights and obligations of the parties. Section 8, chapter 206, Laws of 1916, the same being section 5180, Hemingway's Code, is a part of what is commonly known as the New York Conference Bill, which has been adopted in not fewer than thirty-four states of the Union.

The statute, which is binding both upon the appellant and the appellees in this case, expressly declares that every certificate shall provide that the several documents therein referred to: "shall constitute the agreement between the society and its members." There is no option. If the society qualifies as a fraternal benefit society, the contract must be evidenced by the various writings detailed by the statute.

The Columbian Mutual Life has indeed qualified and is operating as such and there is no dispute about this

in the evidence. This has been recognized in previous litigation between the society and other parties.

It was in pursuance of this agreement, as embodied in the Constitution, that solemn affidavits were executed by members of Mrs. Harrington's family, stating among other things the age of Mrs. Harrington. These affidavits were on forms required by the society and voluntarily executed at the request of the society and by the parties interested in this lawsuit. They were competent, therefore, as declarations against interest and to show the true age of the deceased. They are made competent by the very constitution and laws of the society, which are binding on the beneficiaries. Can it be doubted that these affidavits are correct? If introduced in evidence would they not show the true age? If the age of deceased was as sworn to in the affidavits, then Mrs. Harrington was not eligible to membership or the beneficiary covenant delivered to her, and, therefore, the plaintiffs in this suit could not prevail. The exclusion of these affidavits, therefore, constitutes reversible error.

On ascertaining the true age the society tendered back to the plaintiffs all sums paid by Mrs. Harrington on account of the covenant sued on, and offered to do, in that respect, complete equity, and the defendant renewed the tender on the trial.

The Proof Shows That the Defendant was and is a Fraternal Benefit Society Incorporated Under the Laws of Mississippi and Operating as Such. In a desperate attempt to show that Mrs. Harrington was not bound by her statements and representations and warranties contained in her written application for membership, counsel would have the defendant, a foreign fraternal benefit society, incorporated at some place unknown and perhaps floating about in some ephemeral fashion, without any domicile whatever.

The very declaration, therefore, commits the plaintiff to the proposition that the defendant is a fraternal benefit society. In the next place, Mr. Binford, the President and chief executive, testifies without contradiction and

without objection that the defendant is incorporated as a fraternal benefit society under the laws of Mississippi. In the next place, the charter, constitution, and by-laws were identified by Mr. Binford and speak for themselves.

Again, the very application for membership recites on its face that the defendant is incorporated under the laws of Mississippi, and more than this, there is appended a· certificate from Commissioner Henry certifying to the incorporation. The record abundantly shows, therefore, that the defendant was incorporated under the laws of Mississippi and operated as a fraternal society under chapter 206, Laws of 1916, Hemingway's Code section 5173, *et seq.*

PLAINTIFFS ARE ESTOPPED TO DENY THE MISSISSIPPI COR-PORATION OR ITS CHARACTER AS A FRATERNAL SOCIETY. The rule is well established that if one deals with a corporation as such, he is estopped to deny the legal existence of the corporation. The rule is general and has wide application and many illustrations are found in the law books and adjudicated cases. *Johnson* v. *Gumbel,* 19 So. 100; *John Lucas & Co.* v. *Bernhardt's,* 100 So. 399; *Wheellock* v. *Kost,* 77 Ill. 296; *Wadesboro Cotton Mills Co.* v. *Burns,* 114 N. C. 353, 19 S. E. 238; *Mechanics Building & Loan Association* v. *Minnich,* (Pa.) 1 Kulp. 513; *Black River Imp. Co.* v. *Holway,* 85 Wis. 344, 55 N. W. 418; *Chubb* v. *Upton,* 95 U. S. 665, 24 L. Ed. 523.

In 12 American Digest, Century Edition, 154, many cases are listed under Key No. 92—"Estoppel of Members and Stockholders." This rule applies, and certainly should apply, with great force to the members and beneficiaries of a fraternal society where the society itself is simply a majority of its members and each member is both insurer and insured. See, also; *Gillman* v. *Druse,* 111 Wis. 400, 87 N. W. 557; *Manship* v. *New South B. & L. Ass'n.,* 110 Fed. 845, 14 C. J. 249.

The very covenant sued on and made an exhibit to the declaration, says: "This covenant is issued by the Columbian Mutual Life Assurance Society, herein referred to as 'the society.' It shows on its face the proper

name of the society, and shows on its face that the defendant is a society.

Adverting again to the contentions of learned counsel that the printed copies of the constitution and laws were not competent here, again counsel have not read chapter 206, Laws of 1916, and especially section 22 thereof appearing as section 5194, Hemingway's Code.

This section has been affirmatively construed by this court and all questions foreclosed by *Sovereign Camp, W. O. W.,* v. *Garner,* 125 Miss. 8, 87 So. 458. The rule is that corporations organized under general laws may be shown to exist by simply proving that the corporation assumes to act as such. 14 C. J., par. 173.

The court takes judicial knowledge of the law under which the Columbian Mutual Life was organized, and when we couple with the law itself facts showing the operation of the fraternal benefit society and the fact that the plaintiffs contracted with the defendant as such, sufficient legal incorporation is shown.

Argued orally by *J. H. Sumrall* and *J. Morgan Stevens,* for appellant, and *R. T. Hilton* and *A. H. Longino,* for appellees.

McGowen, J., delivered the opinion of the court.

Miss Maggie Harrington for herself and as next friend for her minor sisters, Mrs. Nina Newman and Miss Eva Harrington, filed her declaration in the circuit court of Simpson county against the defendant, based upon the "covenant of insurance" issued by the defendant upon the life of Mrs. Louisa W. Harrington, dated the 11th day of April, 1922, for one thousand dollars, the face of the covenant. Among other things the declaration charged that the "Columbian Mutual Life Society, a nonresident fraternal or benevolent society, but which has not been incorporated in the state of Mississippi, and is a foreign society," etc. And further charged that on the —— day of ——— Mrs. Louisa W. Harrington, the

insured, departed this life, having complied with the terms of this covenant in her lifetime, and that plaintiffs were entitled to receive by virtue of the contract the sum of one thousand dollars. Attached to the declaration, and as an exhibit thereto was what is denominated as covenant No. 106187, issued by the Columbian Mutual Life Assurance Society, their ordinary life beneficiary covenant, which is too long to copy in this opinion. We quote from said contract as follows:

"Proof of death satisfactory to the society shall be furnished within one year from the date of death of the assured, and written notice shall be given within ten days of any accident for which benefits are provided in this covenant, and no legal proceedings for recovery upon this covenant shall be brought until the assured has exhausted his rights of appeal under the constitution and laws of the society, nor in any event within ninety days after filing of proofs of death or disability, and no action at law or in equity shall be brought or maintained on this covenant unless such action is brought within one year from the time the right of action accrues."

The covenant further stipulated for the compliance on the part of the assured with the constitution and by-laws of this society now existing or as hereafter legally amended. Section 23 of the covenant partially quoted is as follows:

"The Columbian Mutual Life Assurance Society is incorporated as a fraternal beneficiary society under the laws of the state of Mississippi," etc.

Also as a part of the exhibited covenant we find the list of the founders on page 23 of the record setting out the names of Lloyd T. Binford and more than twenty associates, prominent citizens of Mississippi and other states.

The Columbian Mutual Life Assurance Society filed its plea of the general issue and notice under the general issue that, by virtue of chapter 206, Laws of 1916, in addition to the covenant sued on, the contract was further evidenced by the articles of association, constitution, and

laws of the defendant society, application for member-ship, medical examination, under section 5180, Heming-way's Code. It further gave notice that Mrs. Harring-ton, the assured, under section 290 of the society's con-stitution, was obligated to state the condition of her health and her true age in her application. And they further gave notice that Mrs. Harrington stated in her application that she was of sound health, and stated specifically that she was not afflicted with cancer, and that she did not have lumps in her breast, and that the constitution of the order of the society provides that the answers in the application should be strict warranties, and would form the only basis of liability. That at the time the application was made the assured was afflicted with carcinoma of the breast. They further alleged that she represented in the application that she was fifty-five years of age, when at that time she was fifty-six years of age, and not insurable under the contract applied for and obtained. It further set out an acceptance by Mrs. Harrington upon the delivery of the covenant, with a statement that she had not been ill since the examination, and alleged further that on the 28th day of April, less than twenty days from the delivery of the covenant, she was operated upon at the Baptist Hospital of Jackson, Miss., and had her breast removed on account of cancer. That the representations and warranties in the applica-tion and written acceptance were false and were breached, and on that account the covenant sued on was breached and no liability attached on account of said breach. The plaintiffs gave notice of special matter to the effect that they would offer to show that the domicile of the society was at Memphis, Tenn., and that a copy of the application, constitution, and by-laws were not at-tached to the covenant or policy or furnished to Mrs. Harrington, and, further, that they would show that the defendant never qualified as a mutual fraternal bene-ficiary association in Mississippi.

The plaintiffs offered in evidence the covenant and rested. Mr. Lloyd T. Binford, the president of the asso-

ciation, testified that the defendant society was a fraternal benefit society under the laws regulating such societies in Mississippi and that it had qualified under chapter 206 of the Laws of 1916. The defendant further offered proof to the effect that carcinoma of the breast was a form of cancer, and by expert witnesses showed that the disease develops slowly, and that between the date of application and the date of operation for this malady this disease could not develop. One of the expert witnesses who performed the operation testified that it was his best recollection that Mrs. Harrington told him that she had been suffering with lumps in her breast and with the trouble for which she was seeking medical assistance in January prior to the date of the operation. The examination shows that Mrs. Harrington, in her application for membership in this society, stated that she had not suffered with lumps in the breast or with cancer, and was not so suffering at that time. The proof further showed that the members of this society formed a mutual society for the mutual benefit of its members in the matter of insurance in which each and all were alike interested. It was admitted that no copy of the constitution and by-laws with application of membership was furnished to the decedent, the assured. That Mrs. Harrington died on September 5, 1922, and the proofs of death and certificate showed that the cause of her death was cancer of the breast, and the proofs of death, consisting of affidavits of physicians, and denominated as Exhibit 6 of the record, with one from the adult beneficiary of the covenant and one from other relatives, were offered in evidence for the purpose of showing that Mrs. Harrington, the assured, died with cancer, and that the claimants showed by the affidavit or proofs that Mrs. Harrington was one year older than represented in the application. It was further shown by the rate book that this character of covenant was only issued to people above sixteen and not over fifty-five years of age. The rate book was offered to show that no rate of insurance was charged on this

character of covenant above fifty-five years. The proofs of death in the form of affidavits as stated above were excluded from the jury, and exception noted.

The defendant showed by all of its expert testimony that this character of cancer or carcinoma of the breast would not develop in the length of time intervening between April 11th, the date of the delivery of the covenant, and April 28th, the date of the operation for cancer, and the further expert opinion that she had the malady for a much longer period of time.

Opposing this view, the plaintiff showed by the daughter of the deceased that about the 1st of April of that year Mrs. Harrington, the assured, had a fall through the back porch floor, and bruised her breast, and that she, the daughter, massaged the breast with liniment; that there were no lumps, but that later, about the 16th of April, that Mrs. Harrington complained that she had for the first time discovered lumps in her breast, and other testimony of this nature as to her complaining of the lumps after the fall and as to the time said complaint was offered.

The testimony of Dr. Giles was offered to show that in that community a Mrs. Patterson had suffered a bruise of the breast on the steering wheel of a car, and that within a shorter time lumps had developed, and carcinoma of the breast and death had ensued therefrom, and the disease developed and death ensued in a much shorter time than is shown in the case of the insured here. Also the husband of Mrs. Patterson was permitted to testify as to the injury and as to the development of the disease.

The record is too voluminous to undertake to copy it, but we think we have fairly stated the salient facts of the case. The case was submitted to a jury, and resulted in a verdict for the plaintiffs for the amount of the covenant, one thousand dollars.

It is earnestly insisted by counsel for appellee that the by-laws and constitution in this case did not bind the assured or the beneficiaries because the society here sued is a foreign corporation; that, under section 2675, Code

of 1906 (section 5141, Hemingway's Code), the insurance
society could not avail itself of any warranties or false
representations as to age or disease or otherwise, unless,
as a foreign corporation, a copy of the by-laws, constitu-
tion, and application was furnished to the insured with
the covenant of insurance.. Upon this objection of course
hinges the decision of this case, and it is clear to us that,
while it is true that the plaintiffs alleged that the de-
fendant society was a nonresident corporation, yet they
attached to their declaration a copy of the contract of in-
surance or covenant of insurance which states plainly that
the corporation is organized under the laws of Missis-
sippi.   Also Mr. Binford testified, as shown by this rec-
ord, that the corporation was duly organized under the
mutual benefit association laws of this state.   The ex-
hibit therefore contradicts this statement in the declara-
tion, and the plaintiff would be bound by the exhibit.
But, if this were not the case, having alleged this defend-
ant to have been a nonresident corporation, the burden
of proof was upon the plaintiff, as a part of its substan-
tive case, to show that the defendant was a foreign cor-
poration and not organized under the laws of Missis-
sippi.   So that we say, first, the exhibit or contract
executed by the parties overturns the averment in the
declaration; second, we say that the burden of proof was
upon the plaintiff to show that which he had affirmed, the
general issue plea having been interposed; third, the
testimony of Binford is uncontradicted in this record;
fourth, and finally, said section applies and refers to life
insurance companies, and does not include a mutual
benefit association such as the Columbian Mutual Life
Assurance Society.  The appellee further insists that the
constitution and by-laws are not complete because of
certain extremely technical objections to the form of the
certificate, and especially as to the number of founders
or incorporators of this society.  A reference to the ex-
hibit shows that the names of the incorporators or found-
ers, as a part of the exhibit attached to the declaration,
and more than twenty names agreed in the contract to

be founders or incorporators, are set forth in that exhibit, by which the plaintiff is bound. It is a fact that the copy introduced shows only nineteen names, only seven are required by section 5184, Hemingway's Code, but a count of the names in the exhibit beginning with the name of Lloyd T. Binford and ending with Hon. J. A. Teat, Jackson, Miss., shows twenty-five names of well-known citizens of the country and disposes of that objection, besides, section 5184, Hemingway's Code, applies to this character of organization, and by that section only seven incorporators are required. We think the certificate attached to the constitution and by-laws complies with the substance of the statute in all respects, and contains a copy of the charter and a copy of the certificate of Henry, the commissioner of insurance, together with the certificate of the national secretary of the society, and in all respects substantially complies with the requirement of the law and entitled to the exemption provided for in section 5176, Hemingway's Code, which is as follows:

"Except as herein provided, such societies shall be governed by this act, and shall be exempt from all provisions of the insurance laws of this state, not only in governmental relations with the state, but for every other purpose, and no law hereafter enacted shall apply to them, unless they be expressly designated therein."

So that we now approach this case upon the errors assigned by the appellant, treating the defendant as a mutual benefit life assurance society of this state, composed of members who have associated themselves together for the purpose, among others, of mutually affording to each other life insurance by mutual assessment, and, as was said by Mr. Justice Holmes in the case of *Modern Woodmen of America* v. *Jennie Vida Mixer,* 45 S. Ct. 389, 69 L. Ed. ——, on April 13, 1925, this society is of that character referred to by him as being "the indivisible unity between the members of a corporation of this kind in respect of the fund from which their rights are to be enforced and the consequence that their

rights must be determined by a single law, is elaborated in *Supreme Council of the Royal Arcanum* v. *Green*, 237 U. S. 531, 542, 35 S. Ct. 724, 59 L. Ed. 1089, L. R. A. 1916A, 771. The act of becoming a member is something more than a contract, it is entering into a complex and abiding relation, and, as marriage looks to domicile, membership looks to and must be governed by the law of the state granting the incorporation.''

Counsel for appellant insists, first, that he was entitled to a peremptory instruction; insisting that the testimony of Dr. Giles as a nonexpert witness was not entitled to any consideration. Upon this point suffice it to say that, while the expert testified that the disease of cancer or carcinoma of the breast would not develop in such short time as seventeen days, still Dr. Giles testified for plaintiff that in his personal observation and experience he had seen this disease thus develop, and we know of no rule applicable to the disease of cancer which would render incompetent nonexpert testimony based upon observation and experience. In addition to that, the testimony of the daughter who massaged the breast of the insured is in the record, and cannot be ignored, whatever conclusion one might reach as to the weight of the testimony. There was this issue of fact in the case to be submitted to the jury, and we do not think, in view of Dr. Giles' and Mrs. Newman's testimony, that the defendant was entitled to a peremptory instruction.

Next it is insisted that the testimony of Dr. Giles as to the development of a case of carcinoma of the breast and of her husband as to the date of the bruise and cause thereof is incompetent. No reason is assigned nor rule invoked, and we must think that actual experience and actual observation is always competent in this character of case, especially where the testimony tends to show an exception to the rule announced by the experts. We know of no rule of evidence prohibiting this character of testimony in this character of case, so we do not think there is merit in this assignment of error.

It is next urged that the court erred in excluding the proofs of death submitted by the beneficiaries to the defendant, consisting of affidavits of physicians, relatives,

and of Miss Harrington, one of the beneficiaries. If this testimony was competent it was vital to the defendant's theory of the case, because the affidavits show that she had within a short time been operated upon for cancer, and had within a few months from the date of the delivery of the covenant to her died with that disease; and, further, the proofs of death, executed by those who had interest in the proceeds of the covenant showed that Mrs. Harrington, the insured, had misrepresented her age and had obtained life insurance of a character and at an age not insurable under the by-laws and constitution of this society. The law of the land (section 5180, Hemingway's Code) makes the by-laws and constitution a part of the contract, as does the contract itself in this case, so that it was a pertinent question, if the insured in this case secured insurance, which the members of the society had agreed together should not be issued, by virtue of her statement that she was of insurable age for this class of covenant; then the statement in the proofs, if competent, was vital to the defendant's case. The proofs of death by the terms of the contract exhibited with the declaration are the basis upon which liability of the society rests, as we have quoted from the exhibit in the statement of facts herein. And by the very nature of the contract the statements procured by the beneficiaries in order to fix liability upon the society under the contract are admissible, though not conclusive, as against the assured.

We quote from Ency. of Evidence, vol. 7, p. 573, section 3: *"Proofs of Loss as Evidence. A. In General.* —The proofs of loss or death are admissible in evidence on behalf of the assured only for the purpose of showing that he has complied with the insurance contract in furnishing them; they are not competent to prove the fact of the loss or death, or its cause, or the extent of the loss, or any fact recited therein. The introduction of the proofs of loss by the insurer as a basis for showing fraud or false swearing by the assured does not make them evidence for the latter of facts recited in them.

"*B.   As Admissions.*—The proofs of loss are compe-
tent evidence against the party furnishing them of the·
cause or extent of a loss, or the cause of death of an in-
sured person, or of any other material fact therein re-
cited [citing *Bachmeyer* v. *Mutual Reserve Fund L.
Ass'n,* 82 ·Wis. 255, 52 N. W. 101].   Ordinarily, the rule
extends to certificates and affidavits of physicians and
others [citing *Modern Woodmen of America* v. *Davis,*
84 Ill. App. 439; Id., 184 Ill. 236, 56 N. E. 300; *Nelson* v.
*Nederland Life Ins. Co.,* 110 Iowa, 600, 81 N. W. 807;
and many other cases]."

Quoting further from Ency. of Evidence: "And ver-
dicts of coroner's juries and marine protests furnished
as parts of the proofs of loss by the assured voluntarily,
or under the terms of the insurance contract.   It has·been
denied that certificates of attending physicians and pro-
ceedings of coroner's inquests are competent evidence
against the beneficiary, where they are furnished solely
at the request of the insurer, and not under the terms of
the contract, and where the truthfulness of the facts
found or recited therein is denied by the beneficiary at
the time such certificates or proceedings are furnished.
The admissions contained in proofs of loss are not con-
clusive against the assured"—citing cases where the
proofs of loss were admitted and held not to be conclu-
sive from United States, California, Florida, Georgia,
Illinois, Indiana, Kansas, Louisiana, Massachusetts,
Michigan, Nebraska, New York, Pennsylvania, West Vir-
ginia, and Wisconsin."

On this question, in the case of *Supreme Lodge of
Knights of Honor* v. *Fletcher,* 78 Miss. 377, 28 So. 872,
29 So. 523, our own court held: "In an action on a policy
of life insurance, which by its terms was to be void in
case the insured committed suicide, the finding of a coro-
ner's inquest jury that the decedent committed suicide
is admissible in evidence, and is *prima facie,* but not con-
clusive, of the fact found."

In this case Mr. Justice CALHOON delivered the opin-
ion of the court, and said in part: "In this action on a

March, 1925] Mut. Life Assur. Soc. *v.* Harrington. 849

139 Miss.]                    Opinion of the Court.

life insurance policy the sole question before the jury was whether the death was by suicide. By the laws of the order sued, the beneficiary is required, as a condition precedent to recovery, to furnish it with satisfactory evidence of the death, and 'in case of sudden death, the certificate of the coroner under seal, will invariably be required, and in all cases of death from unknown causes, the particulars and result of any investigation held in the case must be furnished.' The order offered the proofs of death, a part of which was the finding of the coroner's inquest, but the court excluded that part of these proofs. It was error to let in part without the whole. In fact the finding of the coroner's inquest jury was admissible as independent evidence and was *prima facie,* though not conclusive, of the cause of death. *U. S. Life Ins. Co.* v. *Vocke,* 129 Ill. 557; *Fein* v. *Covenant Mut. Ben. Asso.,* 60 Ill. App. 274; *Walther* v. *Mutual Life Ins. Co.,* 65 Cal. 417; *Ins. Co.* v. *Higginbotham,* 95 U. S. 380-390."

So that we conclude that the affidavits furnished by the beneficiaries in compliance with the terms of the covenant of insurance as a part of the proofs of death of the insured were competent as against all the beneficiaries or plaintiffs in this case. Of course, *ex parte* affidavits secured by the insurer, appellant here, on its own initiative are not competent. We think it was manifest error in this case to reject the proofs voluntarily submitted to the insurer by the beneficiaries in order to secure the payment of the policy and in order to fix liability under the terms of the contract, and as a condition precedent to the enforcement of this covenant. And, in view of this error and the very uncertain state of the proof in this case, we feel that the defendant is entitled to another trial.

*Reversed and remanded.*

Etheridge, J., and Smith, C. J., took no part in the decision of this case.

Holden, J., (specially concurring).

I concur with the majority opinion, and I also think the appellant was entitled to a peremptory instruction in the court below, because the evidence is conclusive that the insured woman was afflicted with cancer at the time application was made and the policy was issued.